[No. 29442. *En Banc.* February 19, 1945.]

*In the Matter of the Estate of* NINA ELLIOTT, *Deceased.*
EVA LEONA FRANKFURT, *Appellant,* v. THOMAS N. ELLIOTT,
*Individually and as Executor, Respondent.*[1]

[1]Reported in 156 P. (2d) 427.

*John F. Reed* and *Nelson R. Anderson,* for appellant.

*Riddell & Riddell,* for respondent.

STEINERT, J.—This was a proceeding in which the petitioner, Eva Leona Frankfurt, sought to have the will of Nina Elliott admitted· to probate or, in the alternative, to have the court set aside a decree admitting to probate an earlier will executed by the same testatrix. Upon a hearing before the court without a jury, the petition was denied. Petitioner thereupon appealed.

On January 23, 1936, Nina Elliott executed a will, leaving all of her property to respondent, Thomas N. Elliott, who was her second husband, and appointing him executor of the will. Mrs. Elliott died in Seattle on December 17, 1942, at the age of seventy-six years, and on December 28th Mr.

Elliott, through his attorneys, Henry, Henry & Pierce, of Seattle, filed a petition for probate of the will. On the same day, a hearing was had and a decree was entered admitting the will to probate and confirming the appointment of Mr. Elliott as executor. Shortly thereafter, the executor filed his oath and began publication of notice to creditors.

On May 27, 1943, the executor was notified by letter written by Mr. John F. Reed, an attorney in Seattle, that on July 10, 1939, he had drawn a will for Mrs. Elliott which she had executed in his office on that same day and which named Mr. Elliott as executor. In the letter, Mr. Reed also stated that he believed that this was Mrs. Elliott's last will and testament, and offered to deliver the instrument to Mr. Elliott if he would call at the attorney's office. Receiving no answer to the letter, Mr. Reed, on June 2, 1943, filed the will in the office of the county clerk for King county, who placed it in the probate files of the cause involving the earlier will.

It appears that, in the meantime, two members of the firm of Henry, Henry & Pierce, who were the attorneys of record for the estate, had died, and the third member, Mr. Pierce, had entered the armed service. Mr. Reed made inquiry of the county clerk as to who was latterly representing the estate and was given the name of another firm of attorneys. He then communicated with that firm, told one of its members that he had filed the later will with the clerk, and was in turn advised by the attorney that the information would be conveyed to Mr. Elliott, the executor. Mr. Reed seems to have had several conversations, at various times, with the same firm of attorneys respecting the later will and was assured by them that the matter would be brought to Mr. Elliott's attention. However, at the hearing of the present proceeding before the trial court, it transpired that the firm of attorneys with whom Mr. Reed had communicated had never been employed by Mr. Elliott and had never represented him in the probate matter. The misunderstanding as to who actually succeeded the firm of Henry, Henry & Pierce in representing the estate seems to have come about from the fact that Mr. Pierce on going into the armed service had made an arrangement with the

second firm of attorneys to handle all further proceedings in the probate matter, but Mr. Elliott, acting upon his own initiative, had selected, instead, his present counsel to represent him and the estate.

Apparently nothing further was done with respect to the later will until August 20, 1943, at which time the appellant herein by her counsel filed in the pending probate cause her petition to have that will admitted to probate. It will be observed that at the time this step was taken nearly eight months had elapsed since the probating of the earlier will.

While the later will named Mr. Elliott as executor thereof, he was not made a legatee or devisee therein. On the contrary, the entire estate was devised and bequeathed to Mrs. Elliott's two daughters, one of whom is the appellant, and to a minor grandson. It is conceded that the later will was never delivered to Mr. Elliott, the executor, personally, or to his attorneys; it is also conceded that at no time since being informed of the existence of that will has Mr. Elliott done anything whatever toward bringing it to the attention of the probate court.

Appellant's petition in this proceeding first set forth facts which ordinarily would have been sufficient to entitle the later will to probate. As an alternative cause of action, to be considered only in the event that the trial court should deem the decree admitting the earlier will to probate a final judgment, the petition set forth at length allegations to the effect that probate of the former will had been procured through fraud, mistake, and irregularity, and that, through inadvertence and unavoidable casualty, appellant and the other beneficiaries under the later will had been prevented from defending against respondent's petition to probate the earlier will and from asserting and maintaining their rights under the later will.

Respondent in his answer to appellant's petition set up a general denial and two affirmative defenses: (1) the six-month statute of limitations, and (2) mental incompetency on the part of the decedent at the time of making the alleged will of July 10, 1939. Appellant joined issue by reply, denying the allegations of the affirmative defenses con-

tained in the answer. The matter then came on for trial before the court, and the appellant introduced her evidence in support of the allegations of her petition. At the conclusion of that evidence, respondent moved for a dismissal of the proceeding. The court granted the motion on the ground that appellant's petition constituted a contest of the earlier will and that such contest could not be maintained, because it had not been initiated within the statutory six-month period. The court thereupon entered a formal order of dismissal, from which this appeal was taken.

The principal question presented by the appeal is whether the proceeding instituted by the appellant for the probate of the later will is barred by the statute of limitations governing will contests. Upon that question, two sections of the statute require consideration.

Rem. Rev. Stat., § 1380 [P. C. § 10049], relating to *applications for probate of wills*, hearings thereon, and the effect of orders respecting the disposition of such applications, reads, in so far as it is material here, as follows:

"Applications for the probate of a will and for letters testamentary, or either, may be made to the judge of the court having jurisdiction and the court may immediately hear the proofs and either probate or reject such will as the testimony may justify. Upon such hearing the court shall make and cause to be entered a formal order, either establishing and probating such will, or refusing to establish and probate the same, *and such order shall be conclusive as against all the world except in the event of a contest of such will as hereinafter provided.* . . ." (Italics ours.)

It will be observed that this section of the statute does not require that notice of such hearing shall be given to anyone, but permits the probating of a will upon an *ex parte* application.

Rem. Rev. Stat., § 1385 [P. C. § 10017], relating to will contests and complementing § 1380, *supra*, provides, in part, as follows:

"If any person interested in any will shall appear within six months immediately following the probate or rejection thereof, and by petition to the superior court having jurisdiction contest the validity of said will, or appear to have

the will proven which has been rejected, he shall file a petition containing his objections and exceptions to said will, or to the rejection thereof. Issue shall be made up, tried and determined in said court respecting the competency of the deceased to make a last will and testament, or respecting the execution by a deceased of such last will and testament under restraint or undue influence or fraudulent representations, or for any other cause affecting the validity of such will.

"*If no person shall appear within the time aforesaid, the probate or rejection of such will shall be binding and final as to all the world. . . .*" (Italics ours.)

It is conceded by the appellant in this case that she did not file her petition to probate the later will until more than six months had elapsed after the probate of the earlier will. It will be noted, however, that § 1385, *supra,* does not specifically provide that the question of the probationary eligibility of a subsequent will shall constitute an issue to be raised and determined in a proceeding to contest an earlier will. The only specific issues required by the statute to be made up, tried, and determined in a will contest are those respecting (1) the competency of the deceased to make a will, and (2) the execution of the will by the deceased under restraint, undue influence, or fraudulent representation. Then follows the general clause "or for any other cause affecting the validity of such will."

The italicized portions of the sections of the statute above quoted, as applied to the conceded facts in this case, constitute the basis of the respondent's contention, and of the trial court's decision, that appellant's application for probate of the later will is barred by the statute. Appellant, on the other hand, contends that the offer to probate a later will does not constitute a contest of an earlier will within the intent and meaning of Rem. Rev. Stat., § 1385; that until the entry of a final decree of distribution, the probate court retains full power to set aside any *ex parte* order, including an order or decree probating a will; and that the statutes above quoted should not be so interpreted as to prevent the probate of an instrument which is actually the last and only valid will and testament of the deceased.

There has been much judicial controversy over the question of whether the offer for probate of a later will of the same testator or testatrix constitutes a "contest" of an earlier will which has already been probated. This question is of importance chiefly because of the fact that many, if not most, of the states have statutes fixing a definite period of time within which a contest proceeding may be brought. In this state, a proceeding to contest the validity of a will must be instituted by petition filed within six months immediately following the probate of such will. Rem. Rev. Stat., § 1385, quoted above.

Some courts take the view that the offer of a subsequent will constitutes a contest of an earlier will, within the meaning and intent of the statute, upon the theory and for the reason that such holding will best serve to promote a summary administration and a speedy settlement of the estates of decedents, and thus make for stability and certainty. Other courts, however, take a contrary view, holding that a probate court has inherent, or else implied, power to revoke an order of probate and that it will exercise such power whenever justice clearly requires it. In 1 Bancroft's Probate Practice, which is a treatise on procedure in the the administration of decedents' estates, etc., in fourteen of the western states, the author on page 299, § 165, says:

"The consensus of authority is that where the eligibility to probate of a subsequent will is not, by statute, made an issue to be raised in a contest after probate, it is not subject to the limitation upon such contests, and that a subsequent will may be probated at any time although the effect of such probate is to revoke in part or wholly a will which has already been established."

As already noted above, Rem. Rev. Stat., § 1385, does not specifically require that "the eligibility to probate of a subsequent will" shall be made an issue to be raised in a contest after probate. Any contention that the statute does require such an issue to be so raised must necessarily find its support in the general clause "or for any other cause affecting the validity of such [earlier] will." The question then appears to be one of statutory construction, that is,

whether or not an offer to probate a subsequent will constitutes a "cause affecting the validity" of an earlier will, requiring presentation of such offer to the court not later than six months after the probate of the earlier will.

It may be conceded that in a broad sense an offer of probate of a later will amounts to a "contest" of the contemporaneous validity of a former will, but the specific question before us is whether such an offer is a contest within the intent and meaning of Rem. Rev. Stat., § 1385, which prescribes a statutory limitation period of six months.

Respondent asserts that the question has been definitely settled in this state; and he insists that, under the law as now established, appellant's application for probate of the later will comes within the inhibition of the statute. In support of his contention he cites the following cases: *State ex rel. Wood v. Superior Court,* 76 Wash. 27, 135 Pac. 494; *In re Godfrey's Estate,* 164 Wash. 269, 2 P. (2d) 894; *In re Bronson's Estate,* 185 Wash. 536, 55 P. (2d) 1075, 107 A. L. R. 238; *In re Jolly's Estate,* 3 Wn. (2d) 615, 101 P. (2d) 995, 128 A. L. R. 993; *In re Randall's Estate,* 8 Wn. (2d) 622, 113 P. (2d) 54.

The first case, *State ex rel. Wood v. Superior Court, supra,* was decided in 1913, the opinion being signed by four judges. In that case, a will was admitted to probate on July 12, 1911. One year and one day thereafter, a petition was filed proffering for probate a later will. Rem. & Bal. Code, §§ 1307 and 1309, which were in effect at that time, contained, when read together, almost the identical language now appearing in Rem. Rev. Stat., § 1385, except that the time allowed for contesting the validity of a will was one year, instead of six months, after probate of such will.

After disposing of a question relating to procedure, this court approached the merits of the case with a pronouncement as follows:

"Where the statute authorizes the *contest* of a will, and specifies the time within which such *contest* may be instituted, the court has no jurisdiction to hear and determine a *contest* begun after the expiration of the time fixed in the statute; neither does a court of equity have power to entertain such jurisdiction. [Citing cases.]" (Italics ours.)

Upon the basis of that pronouncement, this court held that the "contest" then under consideration was not initiated within the year provided by the statute, and that therefore the superior court did not acquire jurisdiction to hear and determine the matter.

While the opinion in that case correctly held that the statutes above quoted authorized the *contest* of a will and fixed the time within which such *contest* must be instituted, it is to be noted that the court in that opinion did not *decide,* but merely *assumed,* that the offer of a later will constituted a contest of the validity of an earlier will. That case is therefore of no great assistance to us in the determination of the question here involved, unless it can be said that what a court *assumes* to be the law in a particular case becomes the established law from that time forward. We of course do not yield assent to that proposition. It is also worthy of note, at this point, that the time allowed by the statute then in existence for the contest of a will was one year, while now it is only six months. We shall have occasion later to refer again to this circumstance.

The next case is that of *In re Godfrey's Estate, supra,* decided in 1931, at which time Rem. Rev. Stat., § 1385, was in force and effect. In that case, it appeared that a will dated July 18, 1928, was admitted to probate on December 13, 1928. In the following month, which was well within the statutory six-month period, a petition was filed for the probate of a later will and for revocation of the probate of the former will. Citations were issued "as if the petition were one to contest the earlier will, and they so recited." The executor and executrix of the earlier will appeared in response to the citations and answered, denying the validity of the second will and alleging affirmatively the incompetency of the decedent to execute that will. Trial upon the issues resulted in a decree declaring the testatrix to be of sound mind, establishing the later will as the last will of the deceased, and revoking the decree of probate of the former will.

Subsequently, and *within* six months after the date of the decree admitting the second will to probate, the executrix of

the first will filed a petition attacking the second will on the grounds that the testatrix lacked testamentary capacity and that the execution of the second will was induced by duress, fraud, and undue influence. The executor and beneficiaries under the second will filed an answer putting in issue all of the material allegations of the petition and setting up affirmatively, as a plea of *res judicata,* the former proceedings had upon the petition for probate of the later will and revocation of the probate of the earlier will. Upon the issues as thus joined, this court held, upon appeal, that the adjudication resulting from the hearing on the petition to probate the second will was conclusive upon all issues presented by the subsequent petition attacking that same will. The reasoning by which the court came to that conclusion was as follows: The one ultimate fact to be determined on the petition to probate the second will was whether that document was in fact the will of the deceased; if it was, then the earlier document was not her last will, and the probate of it would have to be annulled; issue was raised on this single ultimate fact and was necessarily determined in that proceeding; upon the trial of that issue the court found all evidentiary facts necessary to establish the later document as the last will of the deceased; a decree was entered accordingly; there was no appeal from the decree and, consequently, it became final and binding upon all parties before the court as to all questions of fact and law touching the validity of the later will.

It is true that, in the course of the opinion, this court, in referring to the petition for probate of the second will, used the following language:

"That petition initiated a *contest* of the earlier will on the ground, and only on the ground, that it was not the last will of the deceased." (Italics ours.)

It is apparent that the question with which we are here primarily concerned was not decided, nor even involved, in that case, because no question as to the timeliness of the petition for probate of the second will was, or could have been, raised therein, for the simple reason that the second will was offered for probate in the very next month follow-

ing the probate of the earlier will. It is quite likely, or at least possible, that the language above quoted was used by this court because the proponent of the second will had herself presented her petition on the theory that it constituted a will contest. At any rate, the decision in that case did not result from the failure to offer a second will for probate within the statutory period, or from a failure to make an attack upon the second will within that period, but rather and somewhat to the contrary, from the failure to appeal at all from a decree which conclusively established the validity of the second will.

The next case is that of *In re Bronson's Estate, supra,* decided in 1936 by this court sitting *En Banc.* Three opinions were delivered in that case. The facts there involved were briefly these: On August 11, 1930, there was filed in the office of the clerk of the superior court for King county a document purporting to be the last will of Ira Bronson, deceased, together with a petition asking that the will be probated. At the same time, there was filed in the same office another document purporting to be a codicil executed by Mr. Bronson about three years after the execution of the aforementioned will. On that same day in August, 1930, the court entered a decree admitting the will to probate, but making no mention of the codicil. In August, 1933, three years after the probate of the will, the executors filed a petition seeking to have the codicil probated. In course of time, the court admitted the codicil to probate, whereupon the parties adversely affected appealed to this court.

The appellants contended that the petition for the probate of the codicil should be held to be a contest of the will. The main opinion, signed by four judges, stated that it was unnecessary to pass upon that question, but at the same time gave expression to the pronouncement that "if the petition to admit the codicil was, in fact and in law, a contest, then it would be governed by Rem. Rev. Stat., § 1385 [P. C. § 10017], requiring such contest to be initiated within six months following the probate of the will." If the main opinion, in conjunction with the other two opinions, had

held that the petition to probate the codicil constituted a contest under the provisions of Rem. Rev. Stat., § 1385, then, manifestly, the codicil would have been rejected on the ground that it was not offered for probate within the statutory period of six months. The main opinion did not dispose of the case on that ground, however, but held that when the petitioner voluntarily asked the court to admit the will without the codicil, he, either properly or mistakenly, abandoned and waived the right, granted by Rem. Rev. Stat., §§ 303, 464 [P. C. §§ 8336, 8130], to have the terms of the will modified by the terms of the codicil, and thus, by his own act, induced the court to enter a judgment which under the provisions of Rem. Rev. Stat., § 1380, was final and conclusive as against all existing facts then known to the proponent and before the court.

Two other judges in that case concurred in the result of the main opinion because of the particular facts there involved, but at the same time expressed themselves as being of the opinion that if, after the probate of a will, a subsequent will or a codicil to a former will is discovered, then the probating of the former will does not operate to estop the beneficiaries under the subsequent will or codicil from having the later instrument probated, provided that the proceedings for that purpose are instituted prior to the entry of a decree of distribution of the estate.

The three remaining judges, joining in a dissent from the main opinion, were of the view that the offering for probate of a later will does not constitute a contest of an earlier will theretofore probated, within the intent of the statute, and, further, that a court of probate has inherent authority, at any time while an estate is still open, to admit to probate a later will than that theretofore probated. The dissenting opinion discussed the latter question at some length, giving its reasons for the conclusion reached and analyzing the authorities relevant to the question. We shall have occasion later to refer in some detail to the dissenting opinion in that case.

It thus appears that in the *Bronson* case, *supra*, five of the judges, members of this court at that time, and consti-

tuting a majority, were of the expressed view that even though a will were, by decree of the court, admitted to probate, a later will or codicil might nevertheless be probated, provided the proceedings for that purpose are instituted prior to the entry of a final decree of distribution. The other four judges did not express any opinion on that question.

The next case is that of *In re Jolly's Estate, supra,* decided in 1940. In that case, the decedent had executed two wills. The first, dated January 13, 1937, was admitted to probate on July 14, 1937. The second will was executed May 13, 1937. On August 7, 1937, a petition was filed asking that the first will be revoked and the second will probated. In response to that petition, the executor of the first will appeared and answered, affirmatively alleging that the decedent was incompetent to make the second will. Upon a trial with the aid of a jury, the decedent was declared to have been mentally incompetent at the time of making the second will. The court thereupon entered an order confirming the finding of the jury and dismissing the petition of the proponent of the second will. On appeal, that order was reversed, resulting in the ultimate probate of the second will. The executor of the first will thereupon filed his final report in which he asked that he be allowed his costs and expenses and also fees for himself as executor and for his attorney. The proponent of the second will filed objections to each and all of the items of expense and disbursement except the initial filing fee of five dollars, and also objected to any allowance of fees to the executor or his attorney.

Upon these issues the matter came on for hearing before the court, where evidence was taken, at the conclusion of which the court approved the claimed expenses and allowed the executor and his attorney each a certain fee. From a decree embodying those findings, the proponent of the second will appealed to this court. His contention upon the appeal was that the controversy between himself and the executor of the first will was a "will contest," that the executor was an unsuccessful "contestant" within the meaning of Rem. Rev. Stat., §1389 [P. C. § 10020a], and that there-

fore the executor was not entitled to his costs. That section of the statute reads as follows:

"If the probate be revoked or the will annulled, assessment of costs shall be in the discretion of the court. If the will be sustained, the court may assess the costs *against the contestant,* which costs may in the discretion of the court include a reasonable attorney's fee." (Italics ours.)

With reference to that contention, this court held that the appellant, the proponent of the second will, having filed a petition for the revocation of the probate of the first will, was himself, rather than the executor, to be deemed the "contestant." Upon that construction, this court held that the matter of costs was within the discretion of the court, as provided in the first sentence of Rem. Rev. Stat., § 1389. That case therefore has little, if any, bearing upon the question with which we are here concerned, and certainly it is of no assistance to us in its solution.

The last case from this court upon the subject is that of *In re Randall's Estate, supra,* decided May 9, 1941. The facts in that case were, briefly, these: Mary Randall, a resident of Moscow, Idaho, died November 20, 1934, leaving a considerable estate in both Idaho and Washington. An instrument purporting to be her will was filed in Latah county, Idaho, on December 10, 1934. Objections to the probate of the instrument were filed, but, upon a hearing, an order was entered admitting the alleged will to probate. On the same day the objectors gave notice of appeal. While the appeal was pending, the proponents of the will obtained exemplified copies thereof and of the order admitting it to probate, and filed them in the superior court for Whitman county, Washington. On the strength of these exemplified copies, the superior court for Whitman county admitted the will to probate.

In the meantime, a contest of the will was initiated in Idaho, and after protracted litigation it was determined that the will was procured through fraud and undue influence. Thus it was finally and conclusively established in the courts of Idaho that Mrs. Randall died intestate. Notwithstanding that adjudication, the superior court for Whitman county

held that its former order admitting the will to probate in this state was invulnerable to attack because of the provision of Rem. Rev. Stat., § 1380, which declares that "such order [establishing and probating or refusing to establish and probate a will] shall be conclusive as against all the world except in the event of a contest of such will as hereinafter provided." An appeal to this court was thereupon taken.

In its opinion in that case, this court referred to a number of our former decisions which construed Rem. Rev. Stat., §§ 1380 and 1385. After a terse statement of the substance of the holdings in each of those cases, the opinion in the *Randall* case drew this conclusion:

"From these decisions, *it would appear* that the court has held domestic wills admitted to probate pursuant to Rem. Rev. Stat., § 1380, invulnerable to attack *on any conceivable ground* unless a contest is initiated within the time limited by Rem. Rev. Stat., § 1385 (Rem. & Bal. Code, § 1309)." (Italics ours.)

It is evident, however, from the opinion itself, that the decision was not rested upon the ground that no proper contest had been timely initiated, for in the next to last paragraph of the opinion appears this statement:

"Holding as we do, under the facts alleged in the amended complaint, that the decree of the superior court of Whitman county is void, it follows that the statute (Rem. Rev. Stat., § 1385) limiting the time for contest can have no application."

The decision in that case was solely upon the ground that the decree admitting the will to probate in this state was void because it was based upon a decree, rendered by the Idaho court, which proved to be of no force or effect. It is also to be borne in mind that the *Randall* case, *supra,* did not involve two wills, but only one purported will.

Having analyzed the foregoing five cases, we may summarize their holdings, in so far as they bear upon the question now before us, as follows: The *Wood* case, *supra,* simply assumed, but did not actually decide, that the offer of a later will constituted a contest of the validity of an

earlier will. The *Godfrey* case, *supra,* although presented to the court "as if the petition were one to contest the earlier will," did not decide that question, and the timeliness of the petition was in no way involved. That case simply held that a decree setting aside the probate of an earlier will and granting probate of a later will, in a proceeding conducted by the interested parties as though it were a contest of the earlier probate, is *res judicata* and a bar to a subsequent contest of the later will, since upon the trial of the former proceeding the court found all the evidentiary facts necessary to establish the authenticity and validity of the later will.

In the *Bronson* case, *supra,* the very question which we have before us here was squarely presented by the litigants, but the main opinion, signed by four judges, expressly declined to pass upon that question, resting its decision upon other grounds. The other five judges, however, were unanimous in the view that at any time, at least until the entry of a final decree of distribution of an estate, a later will than the one already probated may be admitted to probate.

The *Jolly* case, *supra,* simply held that for the purpose of determining the question of the allowance of costs, expenses, and fees to an executor of an earlier will, the probate of which was thereafter revoked and supplanted by the probate of a later will, the proponent of the second will, rather than the executor of the earlier will, is the "contestant." The question with which we are here concerned was neither specifically raised nor decided in that case.

The *Randall* case, *supra,* actually decided nothing more than that an order admitting a foreign will to probate is void, where such order is based upon a decree of a probate court of another state but which decree had no force or effect under the law of that state; and that a void order may be directly attacked at any time by a party adversely affected thereby. Despite its preliminary observations concerning the apparent extent and effect of some of our prior decisions as to the invulnerability of a probated will unless a contest is initiated within the time prescribed by Rem. Rev. Stat., § 1385, the *Randall* case did not hold that the

offer to probate a later will constituted a contest of an earlier will which had previously been admitted to probate. In fact, the opinion specifically stated that Rem. Rev. Stat., § 1385, limiting the time for contest, had no application to the facts in the case.

We may concede that some of the language used in the foregoing cases might warrant the conclusion that this court has adopted a rule to. the effect that a petition to probate a later will constitutes a contest of the validity of an earlier will, within the intent and meaning of Rem. Rev. Stat., § 1385, and, as such, must be filed within six months after the probate of the earlier will. The trial court in the case at bar is not to be criticized for coming to that conclusion, nor for following what then seemed to be the law in this state on that question.

From our analysis of those cases, however, we have endeavored to show that the question is still an open one in this jurisdiction, or at least that it has not as yet been definitely settled. It is now our intention to set that question at rest, and, in doing so, we will in large part follow the line of reasoning advanced by Judge Beals in his dissenting opinion in the *Bronson* case, *supra*. In passing, it should be noted that, on the particular question here under consideration, Judge Beals' dissenting opinion did not represent a minority view, but rather a majority view. It should also be noted that his dissenting opinion was based upon two grounds: (1) that the offering for probate of a later will does not constitute a contest of an earlier will, and (2) that Rem. Rev. Stat., § 1380, does not bar the subsequent offer for probate of a will later in point of time than one previously established.

The right to dispose of one's property by will is not only a valuable right but is one assured by law, and will be sustained whenever possible. *In re Peters' Estate,* 101 Wash. 572, 172 Pac. 870; *In re Phillips' Estate,* 193 Wash. 194, 74 P. (2d) 1015; *Dean v. Jordan,* 194 Wash. 661, 79 P. (2d) 331; *In re Schafer's Estate,* 8 Wn. (2d) 517, 113 P. (2d) 41; *In re Bottger's Estate,* 14 Wn. (2d) 676, 129 P. (2d) 518.

■ To give effect to a testator's will, the instrument must, of course, first be admitted to probate, and, where the testator has made more than one will, the *last* will is the one which must be given effect as the latest and final expression of the decedent's testamentary wishes, if such result can be obtained within the established rules of law. As stated in Rood on Wills (2d ed.), § 413, p. 352,

"It has been declared a fundamental maxim, the first and greatest rule, the sovereign guide, the polar star, in giving effect to a will, that the intention of the testator as expressed in the will is to be fully and punctually observed so far as it is consistent with the established rules of law."

In this connection we adopt the language used by Judge Beals in his dissenting opinion in the *Bronson* case, *supra,* as follows:

"Courts go to the utmost possible length to carry into effect the testator's wishes, provided always that he has given them lawful expression. It is not only the testator's will which must be given effect, but it is his last will which must prevail. Where possible, the last will of a competent testator will be upheld, and courts will not, by technical rules of statutory or other legal construction, defeat the right of the testator to have effect given to the latest expression of his testamentary wishes."

And, further:

"Statutes should not be construed so as to defeat the will of the testator, unless such construction be absolutely required. Neither should the will of a testator be defeated, as here, by the carelessness of the persons whose duty it was to present the codicil for probate. It is not their rights which are taken away, but the right of the testator to have his will carried out. One could be well content if the only result of such negligence as is disclosed by the record in the case at bar were to deprive the negligent person of some property right. But such is not the case. Under the doctrine of the majority opinion, the will of a testator, expressed with all due formality, may be defeated either by fortuitous events, mere carelessness or indifference of someone, whether interested or not in the result, or even by the malevolent design of one seeking indirect or even direct advantage."

These expressions find their authority in the mandate of Rem. Rev. Stat., § 1415 [P. C. § 10042], which provides:

"All courts and others concerned in the execution of *last wills* shall have due regard to the direction of the will, and the true intent and meaning of the testator, *in all matters brought before them.*" (Italics ours.)

The ecclesiastical courts claimed inherent power to revoke probate on account of fraud in obtaining the order of probate, neglect on the part of the next of kin, or the discovery of a later will. Many of the courts in the United States have claimed a similar power in terms practically as wide as those in which the English courts claimed such power. This claim has been made by some of the American courts on the theory that a court of probate has all of the inherent powers of the ecclesiastical courts; by others, on the theory that such power was impliedly conferred by statutes which granted probate powers. The leading case upon the subject seems to be that of *Waters v. Stickney*, 94 Mass. (12 Allen) 1, 90 Am. Dec. 122, wherein, after an extensive discussion of the authorities, the court said:

"In the face of these authorities it is impossible to deny the power of a court of probate to approve a subsequent will or codicil, after admitting to probate an earlier will by a decree the time of appealing from which is past; or to correct errors arising out of fraud or mistake in its own decrees. This power does not make the decree of a court of probate less conclusive in any other court, or in any way impair the probate jurisdiction; but renders that jurisdiction more complete and effectual, and by enabling a court of probate to correct mistakes and supply defects in its own decrees, better entitles them to be deemed conclusive upon other courts. There is no reason to apprehend that such a power may be unjustly exercised. It is vested in the same court which is intrusted with the original jurisdiction over all probates and administrations. No decree admitting a later instrument to probate, or modifying or revoking a probate already granted, can be made without notice to all parties interested; every party aggrieved by the action of the probate court has the right of appeal to this court; and an application of this nature, when one will has already been proved, would never be granted except upon the clearest evidence. The new decree would not necessarily avoid pay-

ments made or acts done under the old decree while it remained unrevoked."

One of the more recent cases is that of *In re Moore's Estate,* 180 Cal. 570, 182 Pac. 285, decided in 1919. In that case, the exact question now before us was presented to the supreme court of California. The statute there involved made the probate of a will conclusive (except as to those under certain disabilities) unless a contest should be filed within one year. Construing that statute, the California court held that the offer for probate of a second will does not constitute a contest, and that therefore the superior court has jurisdiction to entertain a petition for the probate of the second will. The court said:

"This we believe to be in accord with the weight of authority in other jurisdictions. The general rule seems to be that courts of probate have inherent power to set aside their own orders admitting wills to probate upon the discovery of later and inconsistent wills."

In support of its conclusions, the California court reviewed a number of authorities, although at the same time conceding that there were some authorities holding, or seeming to hold, to the contrary. Among these latter authorities, said to be in the minority, the court cited our case of *State ex rel. Wood v. Superior Court, supra,* but stated that the question presented in the *Moore* case was not discussed and apparently was not suggested in the *Wood* case. We have above expressed the same view as to the holding in the *Wood* case.

In the later case of *In re Bentley's Will,* 175 Va. 456, 9 S. E. (2d) 308, the court said:

"But it is equally well settled that the conclusiveness of the judgment of probate of an earlier will does not preclude the probate of a later will for the reason that, as we shall presently see, the probate of the later will is not an attack on the judgment of probate of the earlier will."

Many cases were cited in support of that conclusion.

Other cases to the same general effect are: *Jordan v. Tharp,* 223 Ala. 619, 137 So. 667; *In re Sullivan's Estate,* 104

Colo. 539, 93 P. (2d) 901; *Merrill Trust Co. v. Hartford,* 104 Me. 566, 72 Atl. 745, 129 Am. St. 415; *Tripp v. Clapp,* 126 Me. 534, 140 Atl. 199; *Parsekian v. Oynoian,* 299 Mass. 543, 13 N. E. (2d) 409, 115 A. L. R. 470; *Bowen v. Johnson, Admr.,* 5 R. I. 112, 73 Am. Dec. 49; *Hotchkiss v. Ladd's Estate,* 62 Vt. 209, 19 Atl. 638; *Schultz v. Schultz,* 51 Va. (10 Grattan) 358, 60 Am. Dec. 335; *In re Fisher,* 15 Wis. 567.

In this state, the superior court sitting in probate matters retains all of its powers as a court of general jurisdiction. *Reformed Presbyterian Church v. McMillan,* 31 Wash. 643, 72 Pac. 502; *State ex rel. Keasal v. Superior Court,* 76 Wash. 291, 136 Pac. 147; *In re Martin's Estate,* 82 Wash. 226, 144 Pac. 42; *State ex rel. Neal v. Kauffman,* 86 Wash. 172, 149 Pac. 656; *In re Wren's Estate,* 163 Wash. 65, 299 Pac. 972; *In re Kelley,* 193 Wash. 109, 74 P. (2d) 904.

Under the provisions of Rem. Rev. Stat., §. 1589 [P. C. § 9931], probate courts have been given full and ample power and authority to administer and settle all estates of decedents, minors, insane and mentally incompetent persons, and they have full power and authority to proceed with such administration and settlement in any manner and way which to the court seems right and proper, all to the end that such estates may be by the court administered upon and settled.

Further, by Rem. Rev. Stat., § 1590 [P. C. § 9932], the probate court is authorized to make, issue, and cause to be filed or served, any and all manner and kinds of orders, judgments, citations, notices, summons, and other writs and processes which may be considered proper or necessary in the exercise of its jurisdiction.

Finally, Rem. Rev. Stat., § 1533 [P. C. § 9795], authorizes the probate court upon the hearing of the final report and account to determine who are the legatees or heirs or persons entitled to have the property distributed to them, and in order that the court may be enabled to accomplish that purpose the statute specifically provides:

"The court shall have authority to make partition, distribution and settlement of all estates in any manner which to the court seems right and proper, *to the end that such*

*estates may be administered and distributed to the persons entitled thereto."* (Italics ours.)

Construing a similar statute, this court in the early case of *Reformed Presbyterian Church v. McMillan, supra,* said:

"By statute (§ 6355, Bal. Code) it is made the duty of the court sitting in probate upon the settlement of the final account to distribute the estate among the persons who are by law entitled thereto. This statute, we think, confers upon the court jurisdiction to determine who are entitled to the property, as the power to distribute includes the power to determine to whom distribution should be made. But, if this were not so, the court has inherent power to determine the question, and this in a probate proceeding on the application of one claiming to be an heir or legatee."

These statutes confer upon the probate court plenary jurisdiction and power over the probate of wills, and, in consequence thereof, the probate court may do any and all things essential to make its action effective in the premises. If the necessities of the case demand that the court revise its decrees in order to effect justice, it has the power to do so, to the same extent that any court of general jurisdiction has such power as incidental to its general powers. So long as the court retains its grip upon the assets of an estate, it has the power to control their distribution, and if, in order to distribute the assets to the parties lawfully entitled thereto, it is necessary to vacate an earlier order or decree rendered *ex parte,* the court has that power.

As stated before, at the time of the decision in the *Wood* case, *supra,* the statutory period of limitation was one year, whereas now it is six months. Under the former statute no great hardship would be likely to result, for ordinarily an estate could have been finally settled and distributed within one year, whereas, under the present statute, the time prescribed for contest expires in every instance long before the estate is ready to be distributed. This, in our opinion, affords some reason at least for giving the statute the construction which we now place upon it. Aside from that, however, we are in accord with those authorities which hold that the offer to probate a later will does not constitute a contest of a prior will already pro-

bated, and that therefore the six-month statute of limitations does not apply. This construction, it seems to us, accords with reason and practical fairness, and at the same time does not seriously interfere with the expeditious administration of estates, nor does it unsettle any title to property. On the other hand, it not only tends to promote the chief objective of the probate law, that property should be distributed to those whom the testator intended should receive it, but also enables the court to carry out that purpose so long as the assets of the estate are under its control.

In a supplemental brief, filed on the second hearing in this case, respondent urges and emphasizes the point that the statute as it existed prior to the enactment of Rem. Rev. Stat., §§ 1380, 1385, was construed in two cases and that such construction became a part of the later enactments. The two cases relied upon by respondent are *Horton v. Barto*, 57 Wash. 477, 107 Pac. 191, and *In re Hoscheid's Estate*, 78 Wash. 309, 139 Pac. 61.

We may concede, as respondent contends, that the earlier statutes, Rem. & Bal. Code, §§ 1307, 1309, are, with respect to the question here involved, virtually the same as Rem. Rev. Stat., § 1385, except that in the later statute the time for contesting the *validity* of a will has been reduced from one year to six months. We may likewise concede that the provisions of Rem. & Bal. Code, §§ 1296, 1297, 1302, are in substance comprised in Rem. Rev. Stat., § 1380.

In the *Horton* case, *supra*, decided in 1910, the principal question adjudicated was that in the distribution of an estate of a deceased person, the decree of distribution cannot affect the interests of a minor heir of an heir of the decedent unless jurisdiction of such minor heir has first been acquired in the manner provided by Rem. & Bal. Code, § 1502. In the course of its opinion in that case this court also considered a contention, made by the appellant therein, that the will there involved was invalid because it showed upon its face that the name of the testatrix had been subscribed by another person and that such other person had not endorsed thereon the statement required by Rem. & Bal. Code, § 1321.

Discussing that phase of the case, this court held that the contention presented only a question which was before the court upon the probating of the will, and which might have been again presented to the court within the time allowed (one year) for contesting the will. This court disposed of that contention by saying that in view of the language of Rem. Comp. Stat., § 1309, and in view of the fact that there was no provision for contesting a will other than Rem. Comp. Stat., § 1307,

"the law is that *all contests* based upon *any* cause affecting *the validity of the will* must be commenced within one year after probate." (Italics ours.)

and that

"This will having been duly probated and remaining uncontested for over fifteen years, its *validity* is now beyond question." (Italics ours.)

It will be noted that in the *Horton* case no question of a subsequent will or codicil was involved. It will also be observed that in that case the contention made by the appellant therein related solely to an alleged defect in the execution of the will and that, if the will was thereby rendered invalid, the situation came squarely within the statute which regulated contests affecting the *validity* of a will and prescribed therefor a limitation period of one year. It was not necessary, in that case, to go any further, on that question, than to hold that the alleged defect was "a cause affecting the *validity* of such will" and that the presentation of such cause as the basis for a contest was specifically barred by the statute.

Furthermore, it is now our considered opinion that the term "validity," as used in that clause in Rem. Rev. Stat., § 1385, reading "or for any other cause affecting the validity of such will," has reference only to the genuineness or legal sufficiency of the will under attack, raising the question whether the will is legally sufficient in form, contents, and compliance with the statutory requirements as to execution; it does not relate to the operative effect of the will or the period of its operation. In other words, the former will may, as in this instance, meet all the formal and

statutory requirements necessary to make it a valid will when executed, but yet may cease to have any operative effect simply because it has been supplanted by a later will.

The *Hoscheid* case, *supra,* decided in 1914, involved a situation where a widower, after executing in this state a will in which he bequeathed and devised all of his estate to certain members of his family and collateral kindred, entered into a second marriage in the state of Minnesota. About two years thereafter he left his second wife and returned to the state of Washington. Two years later he died in this state, but at no time had he formally revoked or made any change in his will. In due time, the will was probated, and about fourteen years later the executor filed his final account. Pursuant to the prescribed procedure then obtaining, a decree of distribution was entered. Some months later, the second wife filed her petition, alleging fraud in the probate of the will and asserting that all the subsequent proceedings were void for lack of sufficient notice to her. The trial court held that the order of probate was erroneous and therefore was without prejudice to the assertion of the rights of the petitioning widow; that the decree of distribution was founded on insufficient notice; and that, after the payment of certain fees, the remainder of the estate should be distributed to the heirs at law of the decedent as in case of intestacy.

Upon appeal, this court held that since the notice of hearing was not published for the full time required by Rem. & Bal. Code, §§ 1499, 1500 [P. C. 409, §§ 395, 397], it was insufficient to confer jurisdiction on the probate court to make a final order of distribution.

This court further held, however, that the petitioning widow was nevertheless bound by the order admitting the will to probate, because she had not filed her petition within the year allowed by the statute for contesting a will. The decision was rested largely on the case of *Horton v. Barto, supra.* The reasoning through which the court arrived at its conclusion was that Rem. & Bal. Code, § 1309, now comprised in the second paragraph of Rem. Rev. Stat., § 1385, as quoted above, must be construed as a statute of absolute

repose against the claims of all persons save those laboring under the disabilities mentioned therein, and against all cases covered by Rem. Comp. Stat., § 1307, which is now comprised in the first paragraph of Rem. Rev. Stat., § 1385, as previously quoted herein; that anything going to the *validity* of the will at the time of probate is a proper subject to be raised by a contest of probate; that the probate of a will is final and conclusive as to all things which might have been presented at its probate or within the year allowed by the statute for contest; and that the clause "or for any other cause affecting the validity of such will" is broad enough to include anything affecting the *validity* of the will at the time of its probate.

Again, it will be noted that the *Hoscheid* case, *supra,* did not involve a later will, but simply the effect of marriage upon an existing will. Aside from that, however, the opinion in that case interprets the term "validity," as used in the clause "or for any other cause affecting the validity of such will," in the same manner as did the *Horton* case, *supra.* We have already expressed our present opinion as differing from that view. Under our interpretation of that term, as we have expressed it above, those two cases have no controlling effect upon the question with which we are presently concerned.

We are not unmindful of the rule, invoked by respondent and stated in *Yakima Valley Bank & Trust Co. v. Yakima County,* 149 Wash. 552, 271 Pac. 820, that, when a statute has been once construed by the highest court of the state, that construction is as much a part of the statute as if it were originally written into it.

We also apprehend that the general rule to the effect that when a statute, or a clause or provision thereof, has received a judicial construction by a court of last resort, and such legislation has been substantially re-enacted, the legislature may be regarded as having adopted such construction, is persuasive and in some cases is even regarded as binding upon the courts. This rule is not, however, absolute and does not debar the courts from re-examining their own previously accepted doctrines or from modifying or

overruling their former decisions. *Helvering v. Hallock,* 309 U. S. 106, 84 L. Ed. 604, 60 S. Ct. 444, 125 A. L. R. 1368; *Helvering v. Reynolds,* 313 U. S. 428, 85 L. Ed. 1438, 61 S. Ct. 971, 134 A. L. R. 1155. The limitations placed by the courts generally upon the general rule is comprehensively stated in 50 Am. Jur. 462, Statutes, § 443, in the following language:

"The rule is not, however, conclusive under all circumstances. The fact that a statute is re-enacted without alteration after its judicial interpretation, does not necessarily establish such interpretation as to preclude the court from overruling its former decision. Indeed, the doctrine is only regarded as applicable where the contrary is not clearly shown by the language of the act, or where applicable rules of statutory construction have not been changed, or where, in general, there are no cogent reasons for coming to a different conclusion. It has even been declared that the doctrine is no more than an aid in statutory construction, and that the persuasion that lies behind the doctrine is merely one factor in the total effort to give fair meaning to the language of the re-enacted statute, especially where the one decision was rendered by a court other than one of last resort. It has also been held that one decision construing a statute does not approach the dignity of a well-settled interpretation of which the re-enactment of the statute in the same terms may be deemed an implied legislative approval."

In the succeeding paragraph of the same text it is said that the rule "does not apply where the prior decisions as to the construction of the statute are conflicting."

In our opinion, there are at least three reasons why this general rule of statutory construction should not be applied in this case: (1) because of the inherent power of the probate court to set aside its former decree under circumstances such as are here involved; (2) in the light of the analysis heretofore made of our decisions, it cannot be said that any well-settled rule of conduct has been established; and (3), as determined above, there are cogent reasons for adopting a rule which will permit the probate of a later will at any time prior to the entry of a decree of distribution.

We bring this opinion to a close by saying that our decision is rested upon two grounds: (1) that the offer of a

later will does not constitute a contest of a prior will, within the meaning and intent of Rem. Rev. Stat., § 1385; and (2) that a court of probate has inherent authority at any time, while an estate is still open, to admit to probate a later will than that theretofore probated.

Reversed, with direction to the trial court to proceed further, in accordance with the views herein expressed.

BEALS, C. J., MILLARD, ROBINSON, SIMPSON, JEFFERS, MALLERY, and GRADY, JJ., concur.