MOORE, Chief Justice
(dissenting).
I.
I respectfully dissent. Section 6-5-548(a) of the Alabama Medical Liability Act (“AMLA”), § 6-5-540 et seq., Ala. Code 1975, requires that a plaintiff in a medical-malpractice action prove that the defendant health-care provider[1] “failed to exercise such reasonable care, skill, and diligence as other similarly situated health care providers in the same general line of practice ordinarily have and exercise in a like case.” (Emphasis added.) Section 6-5-548(b) defines a “similarly situated health care provider” when the health-care provider alleged to have breached the standard of care has no medical specialty, “[notwithstanding any provision of the Alabama Rules of Evidence to the contrary,” as
“one who meets all of the following qualifications:
“(1) Is licensed by the appropriate regulatory board or agency of this or some other state.
“(2) Is trained and experienced in the same discipline or school of practice.
“(3) Has practiced in the same discipline or school of practice during the year preceding the date that the alleged breach of the standard of care occurred.”
(Emphasis added.) Likewise, § 6-5-548(c) provides four requirements a similarly situated health-care provider must meet in an AMLA action in which the health-care provider who allegedly breached the standard of care is a specialist. Moreover, if the expert who is testifying is a “health-care provider,” he or she may testify against another health-care provider “based on a breach of the standard of care only if he or she is a ‘similarly situated health care provider’ as defined [in § 6-5-548(b) or (c) ].” § 6-5-548(e). There are no exceptions in the statute for proving the applicable standard of care.
Given the exact (and exacting) burden of proof a plaintiff asserting a medical-malpractice claim must meet, § 6-5-548(a), only expert testimony could establish the “relative”[2] standard of care the defendant health-care provider is held to under the AMLA.[3] But today, by its “reformulation” of this Court’s judicially created exceptions to the AMLA, the majority commits two errors. First, by continuing to insert ex *44 ceptions into the requirements of the AMLA, it ignores the limitations of the AMLA and the limits of this Court’s own authority. Second, by adding another specific exception to the AMLA’s requirements — what the Court calls “reformulating” — this Court not only expands its own judicial exceptions (and thereby shrinks the scope of the AMLA), but flouts stare decisis by contradicting its own precedent that articulated those (once limited) exceptions.
II.
Medical malpractice was originally a matter of common law, with the attendant' burdens of proof and exceptions recognized by Alabama courts, not the Legislature. See, e.g., Parrish v. Spink, 284 Ala. 263, 266-67, 224 So.2d 621, 623-24 (1969) (listing exceptions to the general rule that proof of proper practice, treatment, and procedure in a medical-malpractice case “can be established only by expert medical evidence”). But in 1975 the Legislature passed “The Alabama Medical Liability Act,” Act No. 513, Ala. Acts 1975, and in 1987 the Legislature passed “The Alabama Medical Liability Act of 1987,” Act No. 87-189, Ala. Acts 1987, which supplemented the 1975 act. See § 6-5-541, Ala.Code 1975. The 1987 act, amended in 1996 and again in 2000, codified the standards for the burden of proof in medical-malpractice actions.[4] See § 6-5-548.
Nevertheless, this Court continued to claim that the common-law exceptions to the statutory requirement of expert medical testimony in demonstrating the proper standard of care in a medical-malpractice action were still applicable, and it treated the AMLA requirement of expert testimony as merely a “general rule.” See 851 So.2d at 37; Anderson v. Alabama Reference Labs., 778 So.2d 806, 811 (Ala.2000); Bates v. Meyer, 565 So.2d 134, 136 (Ala.1990). Thus, my first disagreement with the majority is its continued disregard for the Legislature’s legitimately enacted requirements in the AMLA for the burden of proof and its reliance on its own precedent, rather than on the statute, as “the original source” of the judicial exceptions it recognizes. This case presents an excellent opportunity to return to a proper and limited interpretation of § 6-5-548.
The majority defends its decision today by noting that the Legislature amended the AMLA in 1996 and again in 2000 without, the majority asserts, altering the effect of the cases the majority cites as precedent for today’s decision. 851 So.2d at 41. “Presumably, when the Legislature reenacts or amends a statute without altering language that has been judicially interpreted, it adopts a particular judicial construction.” 851 So.2d at 41-42, citing Hall v. Chi, 782 So.2d 218, 222-23 (Ala.2000). The majority presumes that “the exceptions recognized in this opinion are in fact consistent with legislative intent.” 851 So.2d at 42 (emphasis added).
First and foremost, the presumption of “legislative acquiescence,” although a well-recognized rule of statutory construction, is “of limited application and is merely to aid in ascertaining the legislative intent.” 82 C.J.S. Statutes § 370 (1953). “The general rule does not apply where the statute in question is unambiguous, or where the plain language of the statute expresses an intent contrary to the construction given it.” Id. If this Court can ascertain the intent from the language and history of a statute, “it is not necessary to apply any presumptions of law which will aid in the *45 interpretation when its meaning does not otherwise appear.” Long v. Poulos, 234 Ala. 149, 150, 174 So. 230, 231 (1937). See also In re Elliott’s Estate, 22 Wash.2d 334, 156 P.2d 427 (1945) (the general rule of legislative acquiescence is not conclusive, and it is applicable only where the contrary is not clearly shown by the language of the act).
The AMLA, as this Court recognizes, requires expert medical testimony to prove what a layman’s testimony could not — that the defendant health-care provider “failed to exercise such reasonable care, skill, and diligence as other similarly situated health care providers in the same general line of practice ordinarily have and exercise in a like case.” § 6-5-548(a). The language “is plain and unambiguous, and in such a case the Legislature should be understood to mean what [it] plainly expressed, leaving no room for construction.” State v. Praetorians, 226 Ala. 259, 260, 146 So. 411, 412 (1933). “ ‘The courts must confine themselves to the construction of the law as it is, and not attempt ... to supply defective legislation, or otherwise amend or change the law under the guise of construction.’ ” 226 Ala. at 260, 146 So. at 412, quoting 59 C.J. Statutes § 564 (1932). The Legislature’s expressed intent in enacting the AMLA was to limit the threat of legal actions for alleged medical malpractice, § 6-5-540, and the codified requisite burden of proof for the standard of care is mandatory and absolute (notwithstanding the Alabama Rules of Evidence, see § 6-5-548(b) and (e)). No exceptions are recognized or otherwise referred to in § 6-5-548. This Court is bound by the plain and unambiguous language of § 6-5-548, “leaving no room for construction” or presumptions. Praetorians, 226 Ala. at 260, 146 So. at 412.
Second, even if the presumption of legislative acquiescence could properly be applied to the statute at issue here, it does not justify the Court’s addition of another exception to the requirements of § 6-5-548. Today, the Court specifically removes from the reach of § 6-5-548 the factual scenario in which a patient’s calls for assistance go unheeded. The Court claims that because the Legislature has not countered this Court’s ambitious interpretations of § 6-5-548 in past amendments to the AMLA, it is somehow “consistent with legislative intent” to add yet another judicial exception to the statute. However, even if past judicial exceptions have been legitimized by legislative inaction, this Court has no authority to add to those exceptions. It is impossible, of course, for the Legislature to have intended, in 2000 or before, to approve an exception to the AMLA this Court creates in 2002. Such prospective approval of this Court’s interpretations would create plenary power that this Court — or any court— cannot wield within the bounds of the doctrine of separation of powers. See State v. Commercial Loan Co., 251 Ala. 672, 675, 38 So.2d 571, 573 (1949) (while this Court “may interpret the act, [it] cannot amend it”).
III.
Even if I were to accept the principle that this Court has the quasi-legislative powers that it purports to wield today, the decision of this Court runs contrary to its own decisions regarding the exceptions to the AMLA. Before today’s decision, the Court had proposed only four exceptions for the factual circumstances “ ‘ “where want of skill or lack of care is so apparent ... as to be understood by a layman, and requires only common knowledge and experience to understand it.” ’ ”[5] Anderson, *46 778 So.2d at 811 (quoting Tuscaloosa Orthopedic Appliance Co. v. Wyatt, 460 So.2d 156, 161 (Ala.1984), quoting in turn Dimoff v. Maitre, 432 So.2d 1225, 1226-27 (Ala.1983)). Until overruled today, Loeb v. Cappelluzzo, 583 So.2d 1323 (Ala.1991), had limited the exceptions to the four enumerated above. Those exceptions did not include the present scenario — -where a patient’s calls for assistance go unheeded. Thus, under this Court’s own decisions, the Heaths are required by § 6-5-548 to present expert testimony to prove that the defendants breached the relevant standard of care. Indeed, the admission by this Court that a “reformulation” of its own judicially created exceptions was necessary to achieve the outcome it reaches in the majority opinion proves the point. See 851 So.2d at 38.
IV.
By once more altering the rules of the medical-malpractice game, this Court allows the Heaths to prove medical malpractice free from the stricture of § 6-5-548. The Court’s continued adherence to judicially grafted exceptions to the AMLA, and especially today’s grafting of a new exception, continues this Court’s alteration of the Legislature’s clear requirements for bringing an action under the AMLA.
For these reasons, I must respectfully dissent.

. Section 6-5-542(1), Ala.Code 1975, defines a "health-care provider” as a “medical practitioner, dental practitioner, medical institution, physician, dentist, hospital, or other health care provider as those terms are defined in Section 6-5-481.”

. See § 6-5-548(e) ("The purpose of this section is to establish a relative standard of care for health care providers.”).

.Indeed, this Court recognizes today, as it has before, "that the AMLA requires expert testimony in medical-malpractice cases.” 851 So.2d at 40. See, e.g., Schuffert v. Morgan, 777 So.2d 87, 91 (Ala.2000) ("the plaintiff must prove by expert medical testimony that the physician breached the standard of care and by the breach proximately caused the plaintiff's injury”), citing University of Alabama Health Servs. Found. v. Bush, 638 So.2d 794 (Ala.1994).

. Section 6-5-540 states that the Legislature’s expressed intent in enacting the AMLA was to restrict “the threat of legal actions for alleged medical injury causes."

. The judicially recognized exceptions to § 6-5-548, before the majority issued its opinion today, were as follows:
*46 "1) where a foreign instrumentality is found in the plaintiff’s body following surgery; 2) where the injury complained of is in no way connected to the condition for which the plaintiff sought treatment; 3) where the plaintiff employs a recognized standard or authoritative medical text or treatise to prove what is or is not proper practice; and 4) where the plaintiff is himself or herself a medical expert qualified to evaluate the doctor’s allegedly negligent conduct.” ’ ”
Anderson, 778 So.2d at 811 (quoting Allred v. Shirley, 598 So.2d 1347, 1350 (Ala.1992), quoting in turn Holt v. Godsil, 447 So.2d 191, 192-93 (Ala.1984)).