[No. 33335.   Department Two.   October 20, 1955.]

*In the Matter of the Estate of* DAISY I. CAMPBELL, *Deceased.*
EVANS E. COLLIAS, *Appellant,* v. GUNDA J. BERGE, *as*
*Coexecutrix, et al., Respondents.*[1]

[1]Reported in 288 P. (2d) 852.

*David Bailey Smith* and *Stuart K. Nielsen*, for appellant.

*Orville C. Hatch, Jr.*, and *F. Robert Lee*, for respondents.

HAMLEY, C. J.—In this probate proceeding, an order was entered admitting to probate one will and a codicil of such will, and rejecting a second will. This appeal is from that part of the order rejecting the second will.

The will which was admitted to probate was executed by Mrs. Daisy Campbell on March 31, 1952. She was then eighty-one years of age. In this will, which was prepared by her attorneys, she left her estate in equal shares to her sister and brother-in-law. The estate consisted of two hundred forty thousand dollars in personal property and cash.

On December 22, 1952, Mrs. Campbell went to the office of her attorneys and stated that two men had persuaded her to sign a document the day before. She was concerned because she feared the document she had signed might have been a will. Her attorneys therefore prepared, and she then signed, a codicil republishing the will of March 31, 1952, with one amendment as to executors.

On January 22, 1953, pursuant to a petition filed by a nephew, and after hearing, Mrs. Campbell was adjudged incompetent and unable to handle her financial affairs. Seattle-First National Bank was appointed guardian of her estate.

On January 1, 1955, Mrs. Campbell died at Hagerstown,

Maryland. Gunda J. Berge and Mandus C. Berge, named coexecutrix and executor in the codicil of December 22, 1952, petitioned for the probate of the codicil and the will of March 31, 1952. This petition was filed on January 17, 1955, and the matter was set for hearing on January 28, 1955.

On the latter date, Evans E. Collias, the appellant here, filed a will purportedly executed on January 2, 1953, and petitioned for its probate. In this will, decedent's entire estate, except for $22,500, was left to Collias. He was also named executor.

The two probate proceedings were then consolidated for hearing on February 4, 1955. At this hearing, evidence was first received concerning the due execution of the first will and codicil. Collias did not participate in this part of the hearing, although he was afforded an opportunity to do so.

Appellant then proceeded to introduce evidence in support of his petition to probate the second will. Respondents were permitted, over objection, to cross-examine appellant's witnesses and to submit testimony in opposition to appellant's petition. As before indicated, the hearing resulted in the entry of the order now under review, admitting to probate the first will and the codicil, and rejecting the second will.

On this appeal, appellant first contends that it was error to permit respondents to cross-examine witnesses produced in support of the second will, and to produce evidence in opposition thereto.

█ RCW 11.20.020 [cf. Rem. Rev. Stat., § 1380], relating to applications for probate of wills, contemplates an *ex parte* proceeding without notice. *In re Elliott's Estate*, 22 Wn. (2d) 334, 338, 156 P. (2d) 427, 157 A. L. R. 1335. Generally speaking, therefore, an interested party, hostile to a will, should not be permitted to participate in the probate proceeding. He should proceed by way of a will contest, in the manner provided in RCW 11.24.010 *et seq.* [cf. Rem. Rev. Stat., § 1385 *et seq.*]. *In re Larson's Estate*, 187 Wash. 183, 60 P. (2d) 19.

■ Under certain circumstances, however, a hearing upon a petition to probate a will may properly become an adversary proceeding. Where, as here, the court must choose between two or more wills before the court in consolidated hearings, action on each petition may depend upon the disposition made of the other. However valid an earlier will may be in other respects, it will be inoperative, and probate must be denied, if a later will is established. Defeat of the later will, offered for probate in consolidated proceedings, thus becomes necessary in order to obtain probate of the earlier one. Under such circumstances, adversary participation is clearly warranted. See *In re Ney's Estate*, 183 Wash. 503, 48 P. (2d) 924, where the same circumstances were present and the same procedure was followed.

■ Pleadings are not necessary in such a case. The issues are defined by the statutes which recite who may make a will and the requisites of a valid will. See RCW 11.12.010 and 11.12.020 [*cf.* Rem. Supp. 1943, § 1394, Rem. Rev. Stat., § 1395]. The element of surprise is not present here, because the trial judge stated that he would entertain a motion for a continuance. No such motion was made.

■ We therefore hold that the trial court did not err in permitting respondents to cross-examine appellant's witnesses, and in producing evidence in opposition to the second will.

The remaining question is whether the trial court erred in rejecting the second will. The trial court rejected this will because of unexplained erasures and alterations in the instrument, and because the testamentary capacity of Mrs. Campbell on January 2, 1953, had not been sufficiently established.

Concerning the erasures and alterations, the following evidence is pertinent: The will of January 2, 1953, was partly printed and partly in the writing of appellant, the principal beneficiary. In paragraph III, where ten thousand dollars is purportedly bequeathed to Ora Lightner and an

equal amount to charity, the "en" in the "ten" in each case was written over something previously erased.

The testimonial clause of the will, with the blanks which were filled in by hand indicated by italics, reads as follows:

"I have hereunto set my hand and seal and publish and declare this as my last Will and Testament, on this *2nd* day of *January* in the year of our Lord one thousand nine hundred and *Fifty Three (1953)*."

An expert witness testified that, in the written words designating the year, "Fifty Three," the last four letters of the "Three" had been erased and changed. The word "Fifty" and the "T" of the "Three" were written in the same ink as the body of the will, but "2nd," "January," and "hree (1953)" were written in a different ink.

On the cover of the will, which is the reverse of the last page, there is a printed phrase with blanks which were filled in by hand. There is a blank for the testatrix's name and a blank for the date. These blanks were filled in, respectively, as follows: "Daisy I. Campbell" and "Jan. 2, 1953." The "Jan. 2" is written in a different ink than the name Daisy I. Campbell. The last numeral in the "1953" had been erased and the "3" written over.

In the attestation clause, the date was written in a different ink than the written body of the will, but in the same ink as the changes noted in the testimonial clause.

Appellant contends that the changes as to the amount of bequests are immaterial, since they are followed in each case by written figures which tend to confirm the present words.

■ Assuming the soundness of this argument, there is no similar confirmatory test with respect to the erasures and possible alterations as to the year of execution. Wherever the date appears in this will, there are suspicious circumstances surrounding it. The date is particularly important in the instant case, for if the will offered by appellant was not later than the codicil, it has no standing whatsoever. Any change in the date is a material alteration.

*Moore v. Halberstadt*, 246 Wis. 263, 16 N. W. (2d) 819 (1944).

The figures "1953" in the testimonial clause are in the same ink as the changed letters "hree" and in a different ink than the "Fifty T—." This precludes the figures from confirming the word "Three."

■ Appellant argues that it is only natural that such an error would occur on the second day of the new year. He thus appears to concede that the year of execution, as originally written, was "Fifty Two." If the year "Fifty Two" was correctly written when the will was executed, this was not the latest will, and was properly rejected for that reason. Appellant, as proponent of the will, therefore had the burden of explaining the surrounding circumstances and satisfying the court that the change was made to correct an error and not to advance the date of execution. Appellant offered the trial court no reason or testimony to explain the alteration.

Appellant argues that the date as shown in the attestation clause, not having been erased or altered, sufficiently indicates the true year of execution. Our attention is also called to the fact that the signed testimony of the two living signers of the clause, Mrs. Collias and P. D. Rogers, recites the date of execution as January 2, 1953, and was so certified.

The uncontroverted testimony of the expert witness was that the date in the attestation clause was written in a different ink than the written body of the will, but in the same ink as the alterations noted in the date in the testimonial clause of the will. Mrs. Collias and Rogers, when called as witnesses at the hearing, gave no oral testimony as to the year of execution. In view of these circumstances, and of the further circumstances noted below, we do not believe that the date as stated in the attestation clause sufficiently authenticates the erased and altered date which appears in the testimonial clause.

■ The attestation clause provides *prima facie* evidence that the instrument was signed by Mrs. Collias and Rogers, as witnesses, in the presence of the testatrix, by her direc-

tion or request. *In re Chafey's Estate*, 167 Wash. 185, 8 P. (2d) 959. Under the circumstances, it does not, however, create any presumptions as to the true date of execution.

In determining the significance to be attached to erasures and alterations in a will, the trial court may take into consideration other circumstances which tend to arouse suspicion as to the genuineness of the document.

The trial court did so in this case, as revealed by the recitals of the order. Among the circumstances so considered was the fact that the will was partly in the handwriting of the principal beneficiary; that the will was in his possession; that his wife and former employee were the surviving witnesses; that they gave no oral testimony as to the year the document was executed; that different inks were used in several parts of the document; that decedent had reported to her attorneys, in December, 1952, that two men had persuaded her to sign an instrument which may have been a will; and that proof of the date of the will was a determinative issue in the case.

The majority rule, and the rule which this court adopts is that material alterations or erasures appearing on the face of a will raise a rebuttable presumption that the alterations or erasures were made after the execution of the will. 1 Jarman on Wills (8th ed.), 174; 34 A. L. R. (2d) 619, 630, annotation. The burden is then upon the proponent to make an explanation and rebut the presumption. *Martin v. Martin*, 334 Ill. 115, 165 N. E. 644, 67 A. L. R. 1127; 2 Page on Wills (3d ed.), 745, § 886. Appellant offered the trial court no explanations for the erasures and alterations, and therefore they must be presumed to have been made after the will was executed.

For the reasons stated, we hold that the erasures and alterations, particularly with respect to the date, were material. Whether material alterations made subsequent to the execution of a will justify the rejection of the entire will depends upon the facts of each case. 34 A. L. R. (2d) 619, 670, annotation. Where, as here, they have to do with the date on which the will was executed, and there is a

prior will, rejection of the entire will is required. *Moore v. Halberstadt, supra.*

It is accordingly unnecessary to examine the other reasons given for rejection of the second will.

Affirmed.

MALLERY, HILL, WEAVER, and ROSELLINI, JJ., concur.

---

December 5, 1955. Petition for rehearing denied.