66 P.3d 670 (2003)
116 Wash.App. 476
In re the ESTATE OF Margaret BLACK, Deceased.
Douglas William Carlton, Richard D. Burns, Lorna Bemis, and the First Christian Church of Dayton, Appellants,
v.
Myrna Black, Respondent and Cross-Appellant.
No. 20622-0-III.
Court of Appeals of Washington, Division 3, Panel Six.
April 15, 2003.
*672 G. Scott Marinella, Dayton, WA, Michael E. De Grasse, Walla Walla, WA, for Appellants.
Carl J. Carlson, Seattle, WA, for Respondent.
*671 SWEENEY, J.
This is a dispute over competing wills of the decedent, Margaret Black. The court admitted both wills to probate. The second will, contested by the beneficiaries of the earlier will, was admitted by means of an order granting summary judgment. And, while the court appeared to reserve questions of fact regarding the ultimate validity of this second will, the effect of the summary judgment was to preclude fact finding on this question. We therefore reverse the order granting summary judgment admitting this will to probate. We likewise reverse the court's order granting fees to the personal representative of the first will and remand for further proceedings.

FACTS
Margaret Black died on October 11, 2000. Her will was admitted into probate the next day. This will had been executed on December 10, 1992. It left the decedent's Columbia County farm to Douglas William "Bill" CarltonMargaret Black's tenant and legal guardian. The residue of the estate went in equal thirds to Mr. Carlton; Margaret's niece, Lorna Bemis; and Margaret's church, First Christian Church of Dayton. It named Richard Burns as personal representative. This will left Myrna Black nothing:
I mention my Daughter, Myrna Lou Black, to eliminate any doubt that by leaving her nothing under this Will, I have done so intentionally and not as an oversight.
Clerk's Papers (CP) at 78.
On February 8, 2001, Myrna Black contested the 1992 will and petitioned to admit a later will. She alleged the new will had been executed on August 14, 1993. This will left everything to Myrna Black and made her personal representative with non-intervention powers. Ms. Black presented an unsigned copy of this will, alleging the signed original was lost. She filed an affidavit describing the circumstances leading to the execution of the new will. Ms. Black then moved for an order of summary judgment admitting the 1993 will into probate.
Richard Burns, the personal representative under the first will, objected to the admission of the new will. The former beneficiaries joined the action and filed responsive pleadings.
Paul Blauert, a retired attorney, testified by affidavit that in 1993 he drafted a will for Margaret Black at Myrna Black's request. Shortly thereafter he received back the will from Myrna, signed by the testatrix and two witnesses. When Myrna asked for the will upon learning of her mother's death, Mr.
*673 Blauert could not find it. He surmised it was lost when he closed out his files upon his retirement. Mr. Blauert's former secretary generated a duplicate from a computer disc. The disc has since become corrupted. On the same disc was a transmittal letter indicating that Mr. Blauert mailed the executed will to Myrna Black in California in 1994. Ms. Black never received it.
Robert Reiter, a California attorney, also submitted an affidavit. It represented as follows. Mr. Reiter accompanied Myrna Black from California to Seattle in August 1993. Mr. Blauert met them at the airport with the blank will. Mr. Reiter read it. Mr. Reiter and Ms. Black then traveled to Walla Walla, where Mr. Reiter met Margaret Black. He discussed the will with Margaret and ascertained that she knew it was a will, that it left everything to Myrna, and that this was Margaret's intent. Margaret Black read the will and signed it in Mr. Reiter's presence. Mr. Reiter also saw Janet Taylor sign the will. Both Ms. Taylor and Mr. Reiter signed in Margaret Black's presence. Mr. Reiter testified that Margaret had immediately recognized Myrna and was "lucid and strong willed." CP at 29. Margaret said to Myrna, "Thank God, you're here. They are all trying to take my farm. You must stop them." CP at 29.
The second alleged witness to the will, Janet Taylor, filed two declarations. In 1993 she had been a notary public and witnessed many signatures and wills. She had no independent recollection of witnessing this will. She acknowledged her signature notarizing Margaret's grant of durable power of attorney to Myrna on the same date, however. When told that others recollected that she had been accompanied by her eight-year-old daughter, Ms. Taylor acknowledged that she does have a daughter who would have been about that age at that time.
The court found Mr. Blauert's affidavit irrefutable. Relying primarily on it and on Mr. Reiter's affidavit, the court found that Ms. Black had satisfied the technical statutory requirements to establish the execution and contents of the lost will sufficiently to admit it to probate. The court found the circumstances highly suspicious, but ruled that any reservations went to the weight, not admissibility, of the will and would be resolved in future will contest proceedings. Judge's Oral Opinion (Sept. 6, 2001) at 4-5.
To avoid potential problems with the deadman statute, the court did not consider Ms. Black's affidavit. The court entered an order of summary judgment admitting the will into probate. The court appointed Myrna Black as personal representative in name only. Richard Burns, the erstwhile personal representative, was retained in the capacity of special assistant to the court to continue the day-to-day administration of the estate and preserve the assets.
Over Ms. Black's objection, the court awarded Mr. Burns his attorney fees from the estate. Ms. Black argued that the real party in interest was Bill Carlton, as the primary beneficiary under the old will; that Mr. Burns and Mr. Carlton had the same lawyers who treated Mr. Carlton as the de facto personal representative; and that Mr. Burns as personal representative had no legitimate interest in whether a later will was probated. The court nevertheless awarded Mr. Burns his fees. The court denied Ms. Black's motion for her own fees from the estate, but offered to revisit the issue of her fees after the impending will contest was resolved.
Richard Burns and former beneficiaries Lorna Bemis and First Christian Church of Dayton (Burns) appeal the admission of the 1993 will into probate. Bill Carlton files a separate brief. Ms. Black cross-appeals the award of attorney fees to Mr. Burns from estate funds, and the denial of her own fees from the estate.

DISCUSSION
PROOF OF LOST WILL
The beneficiaries of the December 10, 1992 (Carlton) will challenge the summary admission to probate of the August 14, 1993 (Black) will.
Standard of Review. RCW 11.96A.020 confers plenary power on the probate court. The court has "full power and authority" to proceed "in any manner and *674 way that to the court seems right and proper, all to the end that the matters be expeditiously administered and settled by the court." RCW 11.96A.020(2). Proceedings for probate of wills are equitable in nature. Review is therefore de novo on the entire record. In re Estate of Ney, 183 Wash. 503, 48 P.2d 924 (1935). We may affirm the trial court's ruling on any grounds supported by the record. Id. at 505, 48 P.2d 924. The overriding consideration in Washington probate proceedings is the determination of the decedent's wishes. In re Estate of Stein, 78 Wash.App. 251, 259, 896 P.2d 740 (1995).
Proof of Execution of a Lost Will. The probate statute provides only general guidance on the question of whether to admit a lost will:
If a will has been lost ..., the court may take proof of the execution and validity of the will and establish it.... The proof must be reduced to writing and signed by any witnesses who have testified as to the execution and validity, and must be filed with the clerk of the court.
RCW 11. 20.070(1).
Proof of the execution of a lost will is by a preponderance of the evidence. In re Estate of Nelson, 85 Wash.2d 602, 607-08, 537 P.2d 765 (1975); In re Estate of Peters, 43 Wash.2d 846, 860, 264 P.2d 1109 (1953). The contents of the will must be proved to the satisfaction of the probate judge by clear, cogent, and convincing evidence. RCW 11.20.070(2). Whenever a prior will has already been proved and a second will is offered, the petition to probate the new will should not be granted "`except upon the clearest evidence.'" In re Estate of Elliott, 22 Wash.2d 334, 352, 156 P.2d 427 (1945) (quoting Waters v. Stickney, 94 Mass. (12 Allen) 1, 90 Am. Dec. 122 (1866)).
The proponent must prove that the will was in existence at the time of the testator's death and that it was properly executed. The evidence must consist "at least in part of a witness to either its contents or the authenticity of a copy of the will." RCW 11.20.070(2). The will's contents must be proved "clearly and distinctly" by testimony of at least two persons. Nelson, 85 Wash.2d at 605, 537 P.2d 765. These need not be the two attesting witnesses to the original will as required by RCW 11.12.020(1).[1]
Ms. Black produced the evidence called for in RCW 11.20.070 in the form of the affidavits of Mr. Blauert and Mr. Reiter. An attestation clause is prima facie evidence that the instrument was signed by the witnesses in the presence of the testatrix and at her direction. In re Estate of Campbell, 47 Wash.2d 610, 615-16, 288 P.2d 852 (1955). This will contains an attestation clause.
The only way for the opponents to disprove the evidence offered in support of the will would be to produce some evidence tending to undermine the credibility of Mr. Blauert and Mr. Reiter. The opponents deposed both witnesses but offered no evidence that these witnesses were not truthful. There is nothing in the record upon which the probate court could base a rejection of the proffered will. The court correctly concluded that Ms. Black had met the statutory requirements for admitting to probate a lost will.
PROPRIETY OF SUMMARY JUDGMENT
We nevertheless conclude that summary judgment was inappropriate. The disputed facts and circumstances surrounding the execution and validity of the Black will preclude summary judgment in this case. An order of summary judgment would have the unintended consequence of rendering the unresolved factual disputes over the will's technical validity and contents res judicata in subsequent contest proceedings, contrary to the probate statutory scheme.
A will contest is a purely statutory proceeding, and the court is governed by the provisions of the applicable statute. In re Estate of Toth, 138 Wash.2d 650, 653, 981 P.2d 439 (1999). The jurisdiction of the trial *675 court is "`derived exclusively from the statute,... [and] can only be exercised in the mode and under the limitations therein prescribed....'" State ex rel. Wood v. Superior Court, 76 Wash. 27, 31, 135 P. 494 (1913) (quoting Wheeler v. Wheeler, 134 Ill. 522, 525-26, 25 N.E. 588 (1890)).
In the usual case, the probate scheme provides that wills are either admitted to probate or rejected in an ex parte proceeding without notice. Gordon v. Seattle-First Nat'l Bank, 49 Wash.2d 728, 735, 306 P.2d 739 (1957). And the order admitting the will to probate is "conclusive" except in the event of a contest of the will. RCW 11.20.020(1); Gordon, 49 Wash.2d at 732, 306 P.2d 739.
A purported lost will is different, however. The proponent of the second will must notify all interested parties of the impending probate. RCW 11.20.070(1). After the summary proceeding admitting the will to probate, the statutory scheme contemplates that objectors will have the opportunity to dispute the validity of the will in a separate contest proceeding under RCW 11.24.010. Gordon, 49 Wash.2d at 732-33, 306 P.2d 739. At the contest hearing, all questions affecting the regularity of the execution or of the validity of the will can be heard. State v. Tallman, 25 Wash. 295, 296-97, 65 P. 545 (1901). Here, the entry of summary judgment at the initial probate hearing was incompatible with this scheme.
Summary judgment is res judicata as to the parties' rights. Lowe v. Double L Props., Inc., 105 Wash.App. 888, 896, 20 P.3d 500, review denied, 145 Wash.2d 1008, 37 P.3d 290 (2001). "A grant of summary judgment is a final judgment on the merits with the same preclusive effect as a full trial." DeYoung v. Cenex Ltd., 100 Wash. App. 885, 892, 1 P.3d 587 (2000). By granting summary judgment at the preliminary proceeding, the court here inadvertently short circuited the statutory probate scheme.
Disputed Facts. Whether a will was executed, witnessed, and authenticated in the manner and form required by law is a finding of fact. See, e.g., In re Estate of Jolly, 197 Wash. 349, 350, 85 P.2d 267 (1938). Whether a claim has been proved by clear, cogent, and convincing evidence is also a factual determination, which necessarily requires the evaluation of the evidence in the context of the surrounding circumstances. Bland v. Mentor, 63 Wash.2d 150, 154, 385 P.2d 727 (1963).
Here, the court made such findings, and acknowledged that it was doing so. RP (Sept. 26, 2001) at 21 ("I have to find that the will was executed and witnessed in the manner prescribed by law in order to admit it to probate. I can't admit it to probate unless I make such a finding. Based on the affidavit of Mr. Reiter, I do so find.").
On motion for summary judgment, however, the court does not sit as trier of fact. The court merely determines whether any disputed material fact exists and whether the moving party is entitled to judgment as a matter of law. Hudesman v. Foley, 73 Wash.2d 880, 886-87, 441 P.2d 532 (1968).
Here, the record strongly suggests that the court was by no means convinced that no disputed facts existed as to the credibility of Mr. Blauert and Mr. Reiter. The intent of the court was simply to rule that Ms. Black had satisfied the technical prerequisites to admit a lost will to probate. The judge did not intend to foreclose challenges to all aspects of the will's validity, including the veracity and accuracy of Mr. Blauert and Mr. Reiter, at the upcoming contest proceedings.
And this was proper in light of the general rule that, where material facts averred in an affidavit are particularly within the knowledge of the moving party, summary judgment should be denied. The matter should proceed to trial so that the opponent may attempt to disprove the alleged facts by cross-examination and by the demeanor of the witness while testifying. Michigan Nat'l Bank v. Olson, 44 Wash.App. 898, 905, 723 P.2d 438 (1986); Balise v. Underwood, 62 Wash.2d 195, 199-200, 381 P.2d 966 (1963). This exception to the summary judgment rules is not limited just to the moving party herself, but to her witnesses also.[2]
*676 Here, the probate judge recognized that the opponents of the Black will were in the impossible position of proving a negative:
[H]ow do you prove something doesn't exist? ... Actually, it's a difficult proposition to try to prove something doesn't exist, especially when you have a sworn affidavit that says, hey, it did exist, it just isn't around any more; all right?
RP (Sept. 6, 2001) at 38. Moreover, the court was not satisfied that the credibility of any of Ms. Black's witnesses, except for Ms. Taylor, was beyond impeachment.
Here, the court assumed that these issues would remain open to further development in the contest proceedings to be held after the will was probated. See RP (Sept. 6, 2001) at 40 (court's misgivings about the disinterestedness of Mr. Blauert and Mr. Reiter go to the weight, not the admissibility of the will); RP (Sept. 26, 2001) at 16 (technical requirements for admission met; all issues raised to be decided at trial); Judge's Oral Opinion (Sept. 6, 2001) at 5 ("I wish [Mr. Reiter] was more independent, but that goes to the weight not admissibility or proof of a will"). But as we have noted, summary judgment is by definition res judicata as to those issues actually adjudicated or which might have been adjudicated. It is a final appealable judgment-one that has, in this case, actually been appealed.
We reverse the summary judgment order admitting the will to probate.
Single Hearing on Remand. The purpose of separating the preliminary probate decision from any contest is to prevent confusion and conflicts and to avoid separate trials and appeals of separate and distinct contests. In re Estate of Larson, 187 Wash. 183, 188, 60 P.2d 19 (1936). Where challenges to a will such as allegations of undue influence, abuse of confidence, or fraud, arise from a single "`transactional nucleus of facts,'" they could and should be raised in the initial probate challenge. Hadley v. Cowan, 60 Wash.App. 433, 442, 804 P.2d 1271 (1991) (quoting Rains v. State, 100 Wash.2d 660, 663-64, 674 P.2d 165 (1983)). Once it became apparent that two competing wills were on the table, the court was empowered to resolve the mutual contests and the probate question in a single proceeding. Gordon, 49 Wash.2d at 735, 306 P.2d 739. "`The statutes are designed to ... avoid the trial of separate and distinct contests.'" Id. at 733, 306 P.2d 739 (quoting Larson, 187 Wash. at 188, 60 P.2d 19).
On remand, the court should hold a single hearing to adjudicate the validity of both these wills, fully airing each side's contest of the other's proffered will. The court can then enter findings of fact. Based upon the complete findings, the court will decide which will should be given effect as the last will and testament of Margaret Black. See In re Estate of Gherra, 44 Wash.2d 277, 267 P.2d 91 (1954) (court directed on remand to resolve multiple issues affecting probate).

CROSS APPEAL
ATTORNEY FEES
Either the superior court or the court on appeal may, in its discretion, order costs, including reasonable attorneys' fees, to be awarded to any party: (a) From any party to the proceedings; (b) from the assets of the estate or trust involved in the proceedings; or (c) from any nonprobate asset that is the subject of the proceedings. The court may order the costs to be paid in such amount and in such manner as the court determines to be equitable.
RCW 11.96A.150(1).
Ms. Black contends that Richard Burns, as personal representative of the Carlton will (a) lacked standing to oppose the admission of the Black will into probate and (b) acted for the benefit of the beneficiaries of the Carlton will, not the testatrix or the estate. He was not, therefore, entitled to attorney fees from the estate.
The trial court ruled that the petition to probate the Black will was a contest to which Mr. Burns, as executor of the Carlton will, had the duty to respond. The court found no *677 conflict of interest in Mr. Burns's lawyers also representing the will's beneficiaries. It also found that the law firm's numerous contacts with Mr. Carlton were justified by Mr. Carlton's status as lessee of the farm and also as Margaret Black's legal guardian. RP (Sept. 26, 2001) at 55.
Standard of Review. RCW 11.96A.150 gives the court discretionary authority to award attorney fees from estate assets. And we will not interfere with the decision to allow attorney fees in a probate matter, absent a manifest abuse of discretion. In re Estate of Marks, 91 Wash.App. 325, 337, 957 P.2d 235 (1998); In re Estate of Larson, 103 Wash.2d 517, 521, 694 P.2d 1051 (1985). Discretion is abused when it is exercised in a manner that is manifestly unreasonable, on untenable grounds, or for untenable reasons. In re Estate of Niehenke, 117 Wash.2d 631, 647, 818 P.2d 1324 (1991). Because of the "almost limitless sets of factual circumstances that might arise in a probate proceeding," the legislature "wisely" left the matter of fees to the trial court, directing only that the award be made "`as justice may require.'" In re Estate of Burmeister, 70 Wash.App. 532, 539, 854 P.2d 653 (1993) (quoting former RCW 11.96.140 (1994), repealed by LAWS OF 1999, ch. 42, § 637), rev'd on other grounds, 124 Wash.2d 282, 877 P.2d 195 (1994).
Richard Burns. Ms. Black contends that an executor has no legitimate reason to oppose the admission of a later will to probateas opposed to contesting the willand that Mr. Burns is not, therefore, entitled to fees. She cites numerous cases that distinguish a petition to probate a will from a will contest. But we do not read those decisions as limiting the power of the court to award fees. In In re Estate of Elliott, primarily relied on by Ms. Black, the appellate court affirmed the power of the probate court to probate a later will after the statutory time limit for filing a contest. In re Estate of Elliott, 22 Wash.2d 334, 156 P.2d 427 (1945). Thus, the court's intent in distinguishing between filing a competing will and contesting an established will was to expand the power of the probate court, not to impair it. Id. at 352, 156 P.2d 427.
The touchstone of an award of attorney fees from the estate is whether the litigation resulted in a substantial benefit to the estate. Niehenke, 117 Wash.2d at 648, 818 P.2d 1324. This does not mean that attorney fees may never be appropriately awarded against an estate if the estate is not substantially benefited. There is no firm rule. Estate of Kvande v. Olsen, 74 Wash. App. 65, 71, 871 P.2d 669 (1994). In some situations, attorney fees are properly assessed against an estate. In re Estate of Cooper, 81 Wash.App. 79, 92, 913 P.2d 393 (1996). The trial court must evaluate the particular action to determine if its benefit to the estate was substantial. In re Estate of Morris, 89 Wash.App. 431, 434, 949 P.2d 401 (1998).
Here, we note that Mr. Burns may well have been entitled to his fees for two reasons.
(1) The probate of a second will renders inoperative any will which has already been established. Elliott, 22 Wash.2d at 352, 156 P.2d 427. Whenever there are two wills, therefore, the petition to probate the second will has all of the attributes of a will contest. In re Estate of Bowechop, 52 Wash.App. 775, 777, 764 P.2d 657 (1988) (citing In re Estate of Campbell, 47 Wash.2d 610, 613, 288 P.2d 852 (1955)). The executor of an established will properly opposes the admission into probate of a later will. In re Estate of Jolly, 3 Wash.2d 615, 626-27, 101 P.2d 995 (1940).
Here, the court found that Mr. Burns owed a duty to the estate to respond to the petition to probate the alleged lost Black will which had the absolute opposite effect of the Carlton will drafted only eight months before. Even though his opposition was futile, Mr. Burns acted in good faith.
(2) When all the beneficiaries of both wills are involved, the court may award fees from the estate to both sides because the litigation resolves the rights of all. In re Estate of Watlack, 88 Wash.App. 603, 612, 945 P.2d 1154 (1997). Where both sides advance reasonable and good faith arguments in support of their respective positions, the trial court may order costs and fees *678 to be chargeable against the estate, so that all the contesting parties bear the costs of the proceedings. Cooper, 81 Wash.App. at 92, 913 P.2d 393.
Mr. Burns arguably acted in the interests of the estate by bringing all the potential beneficiaries before the court. Accordingly, the judge might well have been within his discretion in awarding fees. We nevertheless reverse the fee award on equitable grounds, as explained below.
Myrna Black. Ms. Black argues that equity requires that she, as the prevailing party in this probate action, be awarded her own fees from the estate, especially as the losing party was awarded fees.
Again, RCW 11.96A.150 gives the court broad discretion to award fees in any manner and to any party it sees fit. In circumstances such as these, where the proponent of a contested will prevails and probate is granted, RCW 11.24.050 authorizes the court to bill the contestants personally for the proponent's fees. It falls short of saying that the court must award the proponent's fees, however. RCW 11.24.050.
The court offers no explanation for its decision to award Mr. Burns fees from the estate but to deny Ms. Black any fee award until after the litigation. This was an abuse of discretion. The estate benefits when all competing interests of all potential beneficiaries are resolved, regardless of the outcome. Watlack, 88 Wash.App. at 612, 945 P.2d 1154.
The court should have either awarded both Mr. Burns and Ms. Black their fees from the estate, or awarded neither their fees.
Fees on Appeal. RCW 11.96A.150 expressly authorizes the Court of Appeals to make an independent decision on the question of fees to any party. We will nonetheless remand all questions of fees to the trial court pending resolution of probate.

CONCLUSION
The order admitting the will to probate is reversed. The orders awarding Mr. Burns's fees and denying Mr. Black's fees are reversed. The cause is remanded for further proceedings in accordance with this opinion.
WE CONCUR: SCHULTHEIS and KURTZ, JJ.
NOTES
[1] RCW 11.12.020(1): "Every will shall be in writing signed by the testator or by some other person under the testator's direction in the testator's presence, and shall be attested by two or more competent witnesses, by subscribing their names to the will, or by signing an affidavit that complies with RCW 11.20.020(2)...."
[2] This is the federal practice also. See, e.g., United States v. Logan Co., 147 F.Supp. 330, 333 (W.D.Pa.1957); Frederick Hart & Co. v. Recordgraph Corp., 169 F.2d 580, 581 (3d Cir.1948).