**IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON**

| | |
|---|---|
| IN THE MATTER OF THE ESTATE OF KEITH R. BONNETT, <br><br> Deceased. | No. 86233-2-I <br><br> DIVISION ONE <br><br> UNPUBLISHED OPINION |
| ESTATE OF KEITH R. BONNETT <br><br>     Appellants/Cross-Respondents, <br><br>     v. <br><br> MARISOL FUENTES AND ULISES FUENTES ESTRADA, <br><br>     Respondents/Cross-Appellants. | |
| YVETTE A. BONNETT AND MATTHEW K. BONNETT, <br><br>     Appellants/Cross Respondents, <br><br>     v. <br><br> MARISOL FUENTES, individually and as Personal Representative of the ESTATE OF KEITH R. BONNETT, <br><br>     Respondents/Cross-Appellants. | |

FELDMAN, J. — Yvette Bonnett appeals from the trial court's summary judgment order dismissing on standing grounds her various claims relating to the

administration of her father's estate.  Marisol Fuentes and Ulises Fuentes Estrada, respondents herein, cross-appeal from the court's subsequent order denying their motion for attorney fees and costs.  We reverse the summary judgment ruling, vacate the order denying fees and costs, and remand for further proceedings consistent with this opinion.

I

In October 2020, Keith[1] executed a will (the 2020 Will) that revoked "all previous Wills . . . made by me," nominated Marisol (his friend and neighbor) as the personal representative of his estate, and named Marisol as the sole beneficiary of his estate.  Also in 2020, Keith executed a power of attorney appointing Marisol as his attorney-in-fact and two quitclaim deeds conveying his residence to himself, Marisol, and Ulises as joint tenants with right of survivorship. Keith died on October 15, 2022.  In February 2023, the trial court, upon petition by Marisol, admitted the 2020 Will to probate and appointed Marisol as the personal representative of Kieth's estate.

Around this same time, Keith's surviving children, Yvette and Matthew Bonnett, initiated several legal proceedings against Marisol and Ulises accusing them of perpetrating "elder abuse" against Keith and unlawfully "ha[ving] him sign over his entire estate to" them.  These legal proceedings included (1) a TEDRA[2] action seeking to void the quitclaim deeds, return the residence to the estate, disinherit Marisol and Ulises, and compel Marisol to provide an accounting of her

---

[1] Because this matter involves many parties who share common surnames, we refer to most of the parties by their first names to avoid confusion.
[2] Trust and Estate Dispute Resolution Act, ch. 11.96A RCW.

activities as Keith's agent under the 2020 power of attorney and (2) a second TEDRA action seeking to annul and revoke the 2020 Will, remove Marisol as personal representative of Keith's estate, appoint a successor administrator, and consolidate the TEDRA proceedings with the probate matter. In support of their arguments, Yvette and Matthew produced a will purportedly executed by Keith in 2009 (the 2009 Will) in which he nominated Yvette as his personal representative, named Yvette as the sole primary beneficiary of his estate, and named Matthew as the contingent beneficiary of his estate should Yvette predecease him.

The trial court consolidated the TEDRA proceedings under the probate cause number and set a trial date. Before trial, Matthew filed a motion to voluntarily dismiss his claims under CR 41(a)(1)(B). The trial court granted that motion. Also before trial, Marisol and Ulises filed a motion for summary judgment seeking to dismiss Yvette's claims for lack of standing. In support of their motion, Marisol and Ulises produced a will purportedly executed by Keith in 2017 (the 2017 Will) in which he "revoke[d] any and all wills . . . heretofore made by me," nominated Hans Sohol (his friend and neighbor) as his personal representative, and named Sohol as the sole beneficiary of his estate. Based on the 2017 Will, Marisol and Ulises argued Yvette lacked standing to challenge the 2020 Will because "[a]t best, if she succeeded on all of her claims, [Sohol] would be the sole heir of [Keith]." Based on this asserted lack of any present interest in Keith's estate, Marisol and Ulisis also argued Yvette "has no right to pursue any claims as to the property in the Estate."

3

Following a hearing, the trial court granted Marisol and Ulises's motion for summary judgment and dismissed Yvette's claims. Having prevailed on summary judgment, Marisol and Ulises filed a motion for an award of attorney fees and costs. The trial court denied that motion because, although Marisol and Ulises "prevailed on all issues by summary judgment," the court "declin[ed] to find the contestant acted without probable cause or without good faith." This timely appeal and cross-appeal followed.[3]

II

Yvette argues the trial court erred in dismissing her claims on summary judgment for lack of standing. We agree.

Summary judgment is properly granted when the pleadings and affidavits show there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. CR 56(c). "This court reviews a motion for summary judgment de novo, construing all facts and reasonable inferences from those facts in the light most favorable to the nonmoving party." *Blue Diamond Grp., Inc. v. KB Seattle 1, Inc.*, 163 Wn. App. 449, 453, 266 P.3d 881 (2011). Additionally, "Standing is a threshold issue, which we review de novo." *In re Estate of Becker*, 177 Wn.2d 242, 246, 298 P.3d 720 (2013).

---

[3] The trial court also entered an earlier order, dated July 24, 2023, denying Marisol and Ulises's request for attorney fees and costs. Here, we review only the subsequent order, dated December 21, 2023, which is the focus of Marisol and Ulises's cross-appeal. And because we conclude the trial court erred in granting Marisol and Ulises's motion for summary judgment, we do not reach Yvette's corresponding arguments regarding the trial court's subsequent order denying her motion for reconsideration.

The standing issue in this appeal is primarily governed by RCW 11.24.010, which authorizes "any person interested in any will" to contest the validity of a will. Cases interpreting this statute have held the statutory requirement "any person interested in any will" is limited to individuals who have "'a direct, immediate, and legally ascertained pecuniary interest in the devolution of the testator's estate, such as would be impaired or defeated by the probate of the will or benefited by the declaration that it is invalid.'" *In re Estate of Kolesar*, 27 Wn. App. 2d 166, 173, 532 P.3d 1070 (2023) (quoting *In re Estate of O'Brien*, 13 Wn.2d 581, 583, 126 P.2d 47 (1942)).  Stated another way, litigants seeking to contest a will "'must stand to lose directly in a financial way'" if the relief they seek is denied. *Id.* (quoting *O'Brien*, 13 Wn.2d at 583).

Marisol and Ulises's standing argument hinges on the validity and asserted effect of the 2017 Will.  They claim, "The trial court properly entered summary judgment as a matter of law because invalidating the 2020 Will results in no pecuniary benefit to [Yvette] given the existence of the 2017 Will."  This argument fails, at the outset, because no party, including Sohol, is seeking to probate the 2017 Will.  As our Supreme Court explained in *O'Brien*, "'[A] will is [not] effective for any purpose until it has been formally established by probate.'"  13 Wn.2d at 590 (quoting *In re Estate of Hyde*, 190 Wn. 88, 92, 66 P.2d 856 (1937)).  That did not happen here with regard to the 2017 Will.

But even if Sohol (or another party with standing to do so) had sought to formally establish the 2017 Will by probate, Yvette contests its validity.[4] While Yvette would arguably lack standing to contest the validity of the 2020 Will if she did not also contest the validity of the 2017 Will—because, as Marisol and Ulises note, she would not lose directly in a financial way if the requested relief were denied—she has a clear pecuniary interest in concomitantly contesting the validity of both wills, as she did below, so that she may inherit from the estate either as the sole primary beneficiary under the 2009 Will or as Keith's daughter under the applicable intestacy statutes.[5] Because Yvette's pecuniary interest in the devolution of Keith's estate would be impaired or defeated by the probate of the 2020 Will and benefited by the declaration that the 2020 Will is invalid, she is an "interested person" within the meaning of RCW 11.24.010 and therefore has standing to assert her claims. This determination is consistent with our Supreme Court's broad recognition, "Practically without exception, the courts have held that the heirs and next of kin of the testator and devisees and legatees under a prior will are authorized to wage a contest as persons interested in the putative will."

---

[4] In response to Marisol and Ulises's summary judgment motion, Yvette challenged the validity of the 2017 Will on the grounds that Keith lacked testamentary capacity to execute it. Yvette argued, with supporting evidence, Keith did not "know the 'objects of his bounty' or his heirs" when he executed the 2017 Will because it "was signed after [he] had suffered at least one stroke and [mistakenly] indicated that he had no children." *See In re Estate of Bussler*, 160 Wn. App. 449, 461, 247 P.3d 821 (2011) (a person is possessed of testamentary capacity if at the time they assume to execute a will they have, *inter alia*, "sufficient mind and memory to . . . recollect the objects of [their] bounty") (quoting *In re Estate of Bottger*, 14 Wn.2d 676, 685, 129 P.2d 518 (1942)).
[5] Washington's intestacy statutes provide that the estate of a person who dies intestate with no surviving spouse shall be distributed to "the issue of the intestate," which refers to the person's "lineal descendants." RCW 11.04.015(2)(a); RCW 11.02.005(11).

*O'Brien*, 13 Wn.2d at 584. The trial court erred in dismissing Yvette's claims on standing grounds.

Our recent opinion in *Kolesar*, which Marisol and Ulises cite in support of their standing argument, does not undermine the above analysis. In *Kolesar*, the primary beneficiaries under a second will (who were not intestate heirs) brought a will contest seeking to supplant the second will with a prior will under which they were only named as contingent beneficiaries. 27 Wn. App. 2d at 173. We observed that if the contestants succeeded in invalidating the second will, they would inherit nothing under the prior will because the primary beneficiaries named in the prior will were still alive. *Id.* Because the contestants "would not suffer any loss" and would, instead, "lose [their] financial interest if the [second] will [were] invalidated," we concluded they lacked standing to contest the second will. *Id.*

Marisol and Ulises's reliance on *Kolesar* is misplaced. The will contestants there were seeking to inherit under a prior will that would *indisputably* govern the distribution of the testator's estate if the second will were invalidated. Here, in contrast, there is no proper basis to conclude, as a matter of law, that the 2017 Will would govern the distribution of Keith's estate if the 2020 Will were invalidated. To the contrary, the validity of the 2017 Will is disputed, and the record indicates that Sohol—the only person who stands to benefit under the 2017 Will—is aware of this litigation involving Keith's estate but has not intervened to contest the 2020 Will, probate the 2017 Will, or otherwise assert his interest under the 2017 Will. The facts at issue here are materially different from those in *Kolesar*.

In sum, the trial court erred in concluding on summary judgment that Yvette lacks standing to contest the validity of the 2020 Will and seek additional relief as set forth in her TEDRA petitions. We reverse that ruling and remand for further proceedings consistent with this opinion.

III

Lastly, Marisol, Ulises, and Yvette request attorney fees on appeal under RCW 11.96A.150(1).[6] The "touchstone" for such an award "is whether the litigation resulted in a substantial benefit to the estate." *In re Estate of Black*, 116 Wn. App. 476, 490, 66 P.3d 670 (2003), *aff'd*, 153 Wn.2d 152, 102 P.3d 796 (2004). Marisol and Ulises also request fees on appeal under RCW 11.24.050,[7] and they cross-appeal from the trial court's December 21, 2023 order denying their motion for attorney fees and costs incurred in the trial court in defending against Matthew's claims.

Because this appeal addresses only the threshold issue of standing and the parties have not yet litigated the merits of Yvette's claims, there has been no demonstrated benefit to Keith's estate nor any determination sustaining or invalidating the 2020 Will. We therefore vacate the trial court's December 21, 2023 order denying fees and costs and exercise our discretion to direct the trial court to determine whether an award of fees (including fees for this appeal) is warranted

---

[6] RCW 11.96A.150(1) provides in relevant part: "Either the superior court or any court on an appeal may, in its discretion, order costs, including reasonable attorneys' fees, to be awarded to any party . . . in such amount and in such manner as the court determines to be equitable."

[7] RCW 11.24.050 states: "If the will be sustained, the court may assess the costs against the contestant, including, unless it appears that the contestant acted with probable cause and in good faith, such reasonable attorney's fees as the court may deem proper."

as to any party when it issues its ultimate resolution on the merits. *See Kolesar*, 27 Wn. App. 2d at 186.

Reversed and remanded.

Feldman, J.

WE CONCUR:

Díaz, J.

Birk, J.