IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | |
|---|---|
| In the Matter of the Estate of:<br><br>Daphne May Burns,<br><br>               Deceased. | No. 87795-0-I<br><br>DIVISION ONE<br><br>ORDER GRANTING MOTION<br>TO PUBLISH |

Appellant, Stephen Charles Porter, moved for publication of the opinion filed on May 11, 2026, and respondents, Vitruvian Design, LLC, and Dorothy Hansen, filed answers to the motion, opposing publication. A majority of the panel has determined that the motion should be granted.

Now, therefore, it is hereby

ORDERED that the motion to publish is granted.

FOR THE COURT:

_Díaz, J._

_Bui, J._                                    _Chung, J._

IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | |
|---|---|
| In the Matter of the Estate of: | No. 87795-0-I |
| Daphne May Burns, | DIVISION ONE |
| Deceased. | PUBLISHED OPINION |

DÍAZ, J. — Stephen Charles Porter claims that administrator Dorothy Hansen breached her fiduciary duty to the estate of Daphne May Burns when she sold the estate's statutory right to redeem a foreclosed condominium to Vitruvian Design LLC. Porter, who had purchased the condominium following foreclosure, moved to void the sale. The commissioner granted Porter's motion and denied Vitruvian's motion for revision. The superior court judge found no evidence of fraud or other misconduct and reversed the commissioner's order. Porter argues that the superior court erred when it found no evidence of fraud or misconduct and alternatively violated "principes of equity." We affirm the superior court's order.

I.    BACKGROUND

Burns died intestate in July 2011 leaving a solvent estate. The only real

property was a condominium in Bellevue. In 2022, the homeowners association sought a foreclosure sale based on the estate's failure to pay the association's assessments. The King County Superior Court entered a decree of foreclosure and authorized a sheriff's sale of the property. At the sheriff's sale on April 26, 2024, Porter purchased the property for $1,100,200. On June 24, 2024, the King County Superior Court confirmed the sale pursuant to RCW 6.21.110. Per RCW 6.23.020, Porter's purchase was subject to the estate's statutory right to redeem the property for eight months following the sheriff's sale.

On October 2, 2024, Dorothy Hansen filed a petition in Snohomish County Superior Court to be administrator of Burns' estate pursuant to RCW 11.28.120. She informed the court that she intended to sell, on behalf of the estate, the right to redeem the foreclosed property to a third party which had expressed interest in purchasing the right before it expired in December.

Hansen served her petition on Burns' adult daughter, the only known heir to the estate, via first class mail at three addresses. The declaration in support of the petition included Hansen's qualifications and the hourly rate she would charge the estate for her services. On November 5, 2024, a commissioner found that the heir was given notice and had not appeared, found that the estate was solvent, and noted the urgency of the situation. The court therefore appointed Hansen as the administrator of the estate with nonintervention powers.[1]

---

[1] Nonintervention powers granted to a personal representative limit the court's authority. An administrator granted nonintervention powers has the power to sell an estate asset in a private sale provided she acts in good faith and with honest judgment. RCW 11.68.090 (1)(c) & (2)(c).

On November 14, 2024, Hansen sold the redemption rights to Vitruvian, the party that had initially expressed interest, for $15,000. Vitruvian provided the King County Sheriff a notice of intent to redeem on November 18, 2024. Upon receiving notice of Vitruvian's intent to redeem, Porter objected to the validity of the sale of the redemption rights and asked the sheriff not to proceed with the redemption process until the matter was resolved. Vitruvian tendered $1,176,330.06 (the sum total of Porter's purchase price, sheriff's fees, and accrued interest) for the redemption, which the sheriff deposited into the court registry pending resolution of the dispute.

On November 27, 2024, Porter, heretofore not a party to the probate case, moved for the court to revoke Hansen's nonintervention powers, void the deed of sale of the redemption rights, and compel an open market auction for the rights. He claimed that Hansen had breached her fiduciary duty to the estate because she sold the redemption rights, which he claimed were "a potentially million dollar asset," for $15,000. Porter did not petition under the Trust and Estate Dispute Resolution Act (TEDRA), chapter 11.96A RCW, which typically governs matters involving estates.

The commissioner expressly made no finding that Hansen had breached her fiduciary duty. But she found the circumstances surrounding the sale of the redemption rights "unusual" and so voided the sale and ordered a public sale of the rights. Porter, who bid $75,000, was the only bidder at the public sale.

On December 19, 2024, Hansen filed her petition to confirm the sale of the rights to Porter for $75,000. The commissioner confirmed the sale over Vitruvian's

objection. Vitruvian moved for reconsideration, which the commissioner denied. Vitruvian moved three times for revision of the commissioner's orders.

Upon revision, the superior court reversed the commissioner's order. The court also entered Findings of Fact and Conclusions of Law, stating that "there is no evidence to establish fraud or other misconduct to support the vacation of the Personal Representative's Deed." It also concluded that Vitruvian was a bona fide purchaser and that "the court's conscience is not shocked by the price Vitruvian Design LLC paid the Estate." Porter timely appeals.

## II.    ANALYSIS

As a preliminary matter, we note that, on a motion for revision, the superior court reviews the commissioner's decision de novo. In re Estate of Bernard, 182 Wn. App. 692, 727-28, 332 P.3d 480 (2014). On appeal, this court reviews the trial court's ruling, not the commissioner's. Id. at 728.

## A.    Breach of Fiduciary Duty

Porter claims that the court erred when it allowed Vitruvian to redeem the property because Hansen's sale of the right to redeem was a breach of her fiduciary duty to the estate. We disagree.

The purpose of TEDRA is "to set forth generally applicable statutory provisions for the resolution of disputes and other matters involving trusts and estates in a single chapter under Title 11 RCW." RCW 11.96A.010. Courts have wide discretion in administering cases under TEDRA. RCW 11.96A.080(1) ("any party may have a judicial proceeding for the declaration of rights or legal relations with respect to any matter, as defined by RCW 11.96A.030"). The court has "full

4

power and authority to proceed . . . in any manner and way that to the court seems right and proper, all to the end that the matters be expeditiously administered and settled by the court." RCW 11.96A.020(2); see also In re Estate of Black, 116 Wn. App. 476, 483, 66 P.3d 670 (2003). When a person dies intestate and no next of kin petitions to be appointed as a personal representative, the court has discretion to appoint "any suitable person" to represent the estate. RCW 11.28.120(7).

When the court appointed Hansen as the representative, it ordered that Hansen "shall administer and close the Estate without further intervention of the Court." As an appointed personal representative with nonintervention powers, Hansen may "mortgage, encumber, lease, sell, exchange, convey, assign, and otherwise transfer the decedent's real and personal property." RCW 11.68.090(1)(c). "[P]ersonal representatives of an estate owe a fiduciary duty to the heirs of the estate and must conform to the laws governing trustees." In re Estate of Reugh, 10 Wn. App. 2d 20, 63, 447 P.3d 544 (2019).

The personal representative "is obligated to exercise the utmost good faith and diligence in administering the estate in the best interests of the heirs." In re Estate of Larson, 103 Wn.2d 517, 521, 694 P.2d 1051 (1985). At oral argument before this court, Porter argued that "under Larson, the personal representative has a fiduciary duty to the estate to *maximize* the return" to the estate. Wash. Ct. of Appeals oral argument, In re the Estate of: Daphne May Burns, No. 87795-0-I (Feb. 24, 2026), at 2 min., 44 sec. through 2 min., 55 sec. video recording by TVW, Washington State's Public Affairs Network, https://tvw.org/video/division-1-court-of-appeals-2026021057/?eventID=2026021057.

We disagree with this interpretation of <u>Larson</u>, a case in which our Supreme Court held that *attorneys* representing an estate breached their "fiduciary duty to the heirs to maximize the rate of return on [their] assets" when they billed 47.4 hours for an activity that expert testimony said should have taken approximately three hours. 103 Wn.2d at 525-27. This duty was based on the Code of Professional Responsibility, which stated that "an excessive charge abuses the professional relationship between lawyer and client." <u>Id.</u> at 521 (quoting Code of Professional Responsibility EC 2-17).[2]

In the case before us, Hansen, as a personal representative, owes a fiduciary duty based on RCW 11.68.090(2)(c), to "exercise a discretionary power in good faith, with honest judgment, and in accordance with the terms and purposes of the . . . interests of the beneficiaries." In other words, the duty of a personal representative—based as it is on statute, not ethical rule—is to act in good faith guided by the interests of the beneficiaries, not necessarily purely economic.

Porter bears the burden of proving that Hansen breached her fiduciary duty. <u>Micro Enhancement Int'l, Inc. v. Coopers & Lybrand, LLP</u>, 110 Wn. App. 412, 433-34, 40 P.3d 1206 (2002). To prevail, he must establish "(1) existence of a duty owed, (2) breach of that duty, (3) resulting injury, and (4) that the claimed breach proximately caused the injury." <u>Id.</u> Hansen owed a fiduciary duty to the estate, as discussed <u>supra</u>. Breach of that duty is generally a question of fact. <u>Lodis v.</u>

---

[2] The Rules of Professional Conduct replaced the Code of Professional Responsibility effective September 1, 1985. <u>See</u> 104 Wn.2d 1102 (1985).

Corbis Holdings, Inc., 172 Wn. App. 835, 857, 292 P.3d 779 (2013). The superior court's finding that "there is no evidence to establish fraud or other misconduct" is a finding of fact that this court reviews for substantial evidence. See Casterline v. Roberts, 168 Wn. App. 376, 381-82, 284 P.3d 743 (2012).

Substantial evidence is sufficient "'to persuade a rational, fair-minded person of the truth of the finding.'" Blackburn v. Dep't of Soc. & Health Servs., 186 Wn.2d 250, 256, 375 P.3d 1076 (2016) (internal quotation marks omitted) (quoting Hegwine v. Longview Fibre Co., 162 Wn.2d 340, 352, 172 P.3d 688 (2007)). So long as this substantial evidence standard is met, "a reviewing court will not substitute its judgment for that of the trial court even though it might have resolved a factual dispute differently." Id. (internal quotation marks omitted) (quoting Sunnyside Valley Irrig. Dist. v. Dickie, 149 Wn.2d 873, 879-80, 73 P.3d 369 (2003)). We hold that there is substantial evidence to support the court's finding that there was no evidence of "fraud or other misconduct." We address Porter's individual arguments to the contrary serially.

Porter first claims that Hansen hid from the court her "relationship" with Vitruvian and, thus, hid a conflict of interest and her lack of independence. But Hansen disclosed to the court that she petitioned to become personal representative because she was "contacted by a third party that is interested in purchasing the redemption rights." The court found no "problem with that" as long as Hansen notified the heir to the estate of Hansen's qualifications and hourly rate, as she did.

She also declared—and it is undisputed—that she had no relationship with

Vitruvian prior to its contacting her to suggest the sale. There is also no evidence in the record that she somehow benefited from her agreement with Vitruvian. We, thus, hold that there is substantial evidence that Hansen herself did not engage in fraud or misconduct by allegedly hiding a prior relationship from the court.

Porter next similarly argues that, because Vitruvian suggested that Hansen petition the court, Vitruvian "orchestrated" the sale and "Hansen's appointment was tainted by conflict of interest." But, as Porter concedes, the court has discretion to appoint "any suitable person," including an unconnected service provider, to represent the estate. RCW 11.28.120(7).

It is true that Vitruvian benefitted from Hansen's appointment because it made it possible to buy the rights from the estate, but the estate also benefitted from selling the rights that would have otherwise expired unexercised. The fact that Hansen opened the probate case after Vitruvian suggested it is not evidence that Hansen in turn breached her duty to act "in good faith, with honest judgment." RCW 11.68.090(2)(c).

Porter next claims that, because Hansen had never sold redemption rights before, she breached her fiduciary duty because she was "not competent" by, e.g., "conduct[ing] no independent investigation of the facts." There is no dispute that Hansen was unfamiliar with redemption rights until Vitruvian explained them to her. But there is also no dispute that Hansen is experienced in serving as an administrator or personal representative of probate estates and knows that her "role is to act as a fiduciary on behalf of the estate." Her qualifications and experience, which are otherwise unquestioned, provide substantial evidence that

8

she was competent and did not breach her fiduciary duty.

Porter next argues that Hansen breached her fiduciary duty because she did not solicit competing bids for the redemption rights. Specifically, he alleges that Hansen did not maximize the value to the estate because she did not solicit an offer from Porter himself. But when Vitruvian offered $15,000 for the redemption rights, Hansen "believed the price to be reasonable because [she] knew the redemption rights would expire on December 26, which was a little over a month away[.]" If Hansen had initiated a bidding war, she would have risked the rights expiring before any sale was finalized. The court therefore had substantial evidence that Hansen did not breach her fiduciary duty when she exercised her discretionary power to accept Vitruvian's ready offer.

Relatedly, Porter claims that Hansen breached her fiduciary duty because she "accepted $15,000 for an asset that could be worth up to $1,000,000." Porter claims that the value of the redemption rights is roughly equal to the remaining equity in the property, calculated by subtracting the sheriff's sale price ($1,100,000) from its market value. His evidence of the market value is the property's tax assessed value ($1,643,000) or its value on Redfin.com[3] ($2,209,225). But Porter does not provide any authority that this is the proper way to calculate value of redemption rights. Redemption rights, as the court found, are an "unusual asset" created by statute, which require a buyer to post the sheriff's sale price plus interest in short order, and yet are worthless to the seller once they

---

[3] Redfin.com is a website that provides real estate services for buying, selling, and renting property in the United States and Canada.

9

expire.

Porter also points to his bid of $75,000 at the public sale as evidence that the rights held significantly higher value than $15,000. But Porter was the only bidder, and the sale took place after Porter had argued to the court that the rights were potentially worth $1,000,000. The fact that Porter was the only bidder at the public sale is substantial evidence that Hansen did not breach her fiduciary duty when she accepted an offer for $15,000.

In short, the evidence above could "persuade a rational, fair-minded person" that Hansen did not engage in fraud or misconduct or otherwise breach her fiduciary duty. Blackburn, 186 Wn.2d at 256. We therefore affirm the court's finding.

B.      Equitable Relief

In addition to the statutory claim above, Porter argues that allowing Vitruvian to exercise the redemption right is inequitable. "[T]he question of whether equitable relief is appropriate is a question of law." Borton & Sons, Inc. v. Burbank Props., LLC, 196 Wn.2d 199, 206, 471 P.3d 871 (2020) (quoting Niemann v. Vaughn Cmty. Church, 154 Wn.2d 365, 374, 113 P.3d 463 (2005)). We therefore review de novo the court's denial of equitable relief. Id.

Courts have wide discretion to fashion an equitable remedy when there is a breach of fiduciary duty. RCW 11.68.070(2) ("the court may order such remedy in law or in equity as it deems appropriate."). "The remedy may include, but not be limited to, awarding money damages, surcharging the personal representative, directing the personal representative to take a specific action, restricting the

10

powers of the personal representative, removing the personal representative and appointing a successor, and awarding fees and costs." RCW 11.68.070(2). Since we hold that Hansen did not breach her fiduciary duty, the court did not have the broad discretionary power to exercise equitable powers to overturn the sale.

Absent a breach of fiduciary duty or other abuse of power, the court's authority to overturn a sale by a personal representative with nonintervention powers is limited. See In re Estate of Rathbone, 190 Wn.2d 332, 339, 412 P.3d 1283 (2018). Although the sale process was perhaps unusual, irregularity alone is not grounds for us to reverse the denial of equitable relief. See Sixty-01 Ass'n of Apartment Owners v. Parsons, 181 Wn.2d 316, 327, 335 P.3d 933 (2014) ("A court should not employ its equitable powers to overturn a judicial sale unless there is gross inadequacy or unfairness to justify equitable intervention.").

Porter argues that an equitable remedy is necessary because Hansen and Vitruvian "manipulated the process" in a way that "deprived [the estate] of significant economic value." But the estate's interest was protected at every step of the proceedings. RCW 11.68.070 protects the interests of the estate by imposing a fiduciary duty on the appointed personal representative and giving the court wide discretion to remedy breaches of said fiduciary duty. The court appointed an experienced fiduciary with the appropriate credentials and the heir was notified of the appointment. Selling the right to redeem on behalf of the estate is within Hansen's responsibility as the appointed representative. RCW 11.68.090(1)(c). As discussed above, Porter does not provide evidence to support his argument that Hansen sold the redemption rights for a "grossly inadequate

sum." Cf. Young v. Young, 164 Wn.2d 477, 482-83, 191 P.3d 1258 (2008) (holding that equitable relief was appropriate when expert testimony established the dollar value of the unjust enrichment).

Moreover, the court must balance the estate's interest in receiving the alleged maximum value with the estate's statutory right to redeem. RCW 6.23.010 gives either the "judgment debtor" or "their successors in interest" the right to redeem real property sold subject to redemption. RCW 6.23.010(1)(a). Washington courts have avoided altering the statutory scheme on equitable grounds. Fid. Mut. Sav. Bank v. Mark, 112 Wn.2d 47, 54-55, 767 P.2d 1382 (1989) (holding that equity is proper if the statute at issue is remedial but not when the statute at issue "creates a substantive right"). Courts should avoid giving a purchaser "the power to make redemption 'so burdensome as to amount to a denial of the right.'" JP Morgan Chase Bank, NA v. Unknown Heirs of Porter, 16 Wn. App. 2d 591, 601, 481 P.3d 1114 (2021) (rejecting a purchaser's argument that a constructive trust should be imposed on a successor in interest to a redemption right) (quoting Bryant v. Starwich, 131 Wash. 101, 107, 229 P. 12 (1924)).

Porter also argues that the court's ruling is inequitable because Vitruvian is "circumventing the sheriff's sale process" through which he bought the property. But Porter acknowledges that his purchase in the sheriff's sale was subject to the estate's "statutory redemption right under Chapter 6.23 RCW." Porter makes no argument that the outcome would have been inequitable if the estate itself had exercised its right to redeem the property. Since the outcome for Porter is the

same whether the property is redeemed by an estate or a "successor in interest," Porter is not entitled to equitable relief. RCW 6.23.010(1).[4]

D.    Attorney Fees

Hansen requests attorney fees, claiming Porter's appeal is frivolous. Br. of Hansen at 20. RAP 18.9 allows this court to award a party attorney fees as sanctions when the opposing party files a frivolous appellate action. Reid v. Dalton, 124 Wn. App. 113, 128, 100 P.3d 349 (2004). "All doubts as to whether the appeal is frivolous should be resolved in favor of the appellant" and "[a]n appeal that is affirmed simply because the arguments are rejected is not frivolous." In re Marriage of Schnurman, 178 Wn. App. 634, 644, 316 P.3d 514 (2013) (citation omitted). An appeal is only frivolous if there is no debatable issue on which reasonable minds might differ and the appeal is so devoid of merit that there is no possibility of reversal. Id.

Although we reject Porter's arguments, we do not view his appeal as so lacking in debatable issues as to be frivolous. The circumstances surrounding the sale of the redemption rights may have been unusual, and the argument that the sale was inequitable is not so devoid of merit that the appeal stood no possibility of success. These are perhaps questions for the legislature to decide. On these facts, and resolving all doubts in his favor, Porter's argument provides reasonable grounds for appeal. We deny the request for fees.

---

[4] Because we affirm the ruling on the merits, we need not address Hansen's arguments that Porter lacks standing to claim breach of fiduciary duty or that his claim is waived on appeal. We also need not address Vitruvian's argument that their purchase is protected because they are a bona fide purchaser.

### III.   CONCLUSION

We affirm the trial court's order.[5]

_Díaz, J._

WE CONCUR:

_Bui, J._                    _Chung, J._

---

[5] In a Statement of Additional Authorities, Porter contends that this court should retroactively apply House Bill 2445, 69th Leg., Reg. Sess. (Wash. 2026). "Generally, we presume that statutes operate prospectively 'unless the Legislature indicates that it is to operate retroactively.'" Kellogg v. Nat'l R.R. Passenger Corp., 199 Wn.2d 205, 220, 504 P.3d 796 (2022) (internal quotation marks omitted) (quoting Densley v. Dep't of Ret. Sys., 162 Wn.2d 210, 223, 173 P.3d 885 (2007)). Even if we were inclined to consider issues to which no party has assigned error or briefed, Porter does not explain how the Legislature intended House Bill 2445 to apply retroactively or remedially, but simply states that it is so. Under RAP 10.3(a)(6), an appellant must provide "argument in support of the issues presented for review, together with citations to legal authority and references to relevant parts of the record." "We do not consider conclusory arguments that are unsupported by citation to authority. Passing treatment of an issue or lack of reasoned argument is insufficient to merit judicial consideration." Brownfield v. City of Yakima, 178 Wn. App. 850, 876, 316 P.3d 520 (2013) (citation omitted). Because the issue is not properly before us, we decline to reach the issue.